2003-NMCA-004

61 P.3d 195

**Patricia TOMLINSON, Plaintiff–Appellant,**

v.

**JACOB George, M.D., Defendant–Appellee.**

**No. 22,017.**

Court of Appeals of New Mexico.

Oct. 17, 2002.

Certiorari Granted, No. 27,817, Jan. 8, 2003.

Roger Eaton, Brady C. Pofahl, Eaton, Martinez, Hart & Valdez, P.C., Albuquerque, NM, for Appellant.

Lynn S. Sharp, Jason Bowles, Sharp & Jarmie, P.A., Albuquerque, NM, for Appellee.

Alice Tomlinson Lorenz, Miller, Stratvert & Torgerson, P.A., Albuquerque, NM, for Amicus Curiae, The N.M. Medical Society.

Michael B. Browde, Albuquerque, NM, for Amicus Curiae, The N.M. Trial Lawyers Association.

William H. Carpenter, Carpenter & Chavez, Albuquerque, NM, for Amicus Curiae, The N.M. Trial Lawyers Association, Amicus Committee.

## OPINION

SUTIN, Judge.

{1} We review whether a medical malpractice claim is barred by the Medical Malpractice Act statute of repose when fraudulent concealment is asserted. The patient was told of her physician's negligence early within the statutory period, but she did not file her malpractice claim until after the statutory period ended. The patient asserted that the statutory period was tolled as a result of the physician's fraudulent concealment. The district court disagreed and granted summary judgment in favor of the physician. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

{2} Plaintiff Patricia Tomlinson received a distal radius fracture and dislocation of her wrist in a vehicle accident on August 20, 1996. Defendant Jacob George, M.D., an orthopedic surgeon, saw Plaintiff the same day, performed a closed external reduction of the fracture, and applied a cast to Plaintiff's wrist. On August 27, October 1, and November 5, 1996, Defendant took further x-rays, which, in Defendant's view, showed Plaintiff's wrist healing and aligning properly. On December 24, 1996, after obtaining the x-rays from Defendant, Plaintiff saw Alfred Blue, M.D. for another opinion. In Dr. Blue's

opinion, Defendant negligently treated Plaintiff in that her fracture had not been properly set. Plaintiff underwent wrist surgery on February 17, 1997, and between that date and July 1999 surgeons treated or evaluated Plaintiff's wrist nineteen times. Plaintiff asserts that she first knew of the alleged negligent act on December 24, 1996.

{3} Plaintiff filed an application with the New Mexico Medical Review Commission on December 13, 1999. The Commission reviewed Plaintiff's case on February 24, 2000. Plaintiff filed the present action on March 2, 2000, pursuant to the Medical Malpractice Act, NMSA 1978, §§ 41–5–1 to –29 (1976, as amended through 1997). Defendant sought summary judgment based on application of the Medical Malpractice Act statute of repose, Section 41–5–13. The district court granted summary judgment dismissing Plaintiff's action.

{4} On appeal, Plaintiff contends the statute was tolled during the period of fraudulent concealment of her improper wrist bone alignment, and that she had three years from the date of discovery of the condition after Defendant's fraudulent concealment within which to file her action. We assume for the purposes of our discussion and conclusion that a genuine issue of material fact exists as to whether Defendant engaged in fraudulent concealment.

**DISCUSSION**

{5} The issue we address is one of law, which we review de novo. *Self v. United Parcel Serv., Inc.*, 1998–NMSC–046, ¶ 6, 126 N.M. 396, 970 P.2d 582.

{6} Section 41–5–13 reads:

No claim for malpractice arising out of an act of malpractice which occurred subsequent to the effective date of the Medical Malpractice Act ... may be brought against a health care provider unless filed within three years after the date that the act of malpractice occurred[.]

{7} The parties agree that the alleged act of malpractice would not have occurred later than November 5, 1996. They present the case essentially under this analysis: If no tolling were permitted, Section 41–5–13 began to run on November 5, 1996. Thus, without tolling for fraudulent concealment, Plaintiff could escape the bar of the statute only by filing before November 6, 1999. However, if tolling were permitted, the statute would have begun to run on December 24, 1996, the date Plaintiff asserts that she first learned of the alleged act of malpractice. If this were the case, Plaintiff's action would not be barred.

■ {8} The issue is whether a fraudulent concealment exception to the occurrence rule in Section 41–5–13 exists under the circumstances of this case that permits Plaintiff to file an action more than three years after the act of malpractice even though she first learned of the negligent act within the three-year period and in adequate time to file a malpractice action within that period exercising ordinary diligence.

{9} For their positions on this issue, the parties look primarily to language in *Kern v. St. Joseph Hosp., Inc.*, 102 N.M. 452, 697 P.2d 135 (1985), a fraudulent concealment case, which permitted the plaintiff's claim filed after the three-year Section 41–5–13 deadline where the act of malpractice was fraudulently concealed for the full three-year period, and *Cummings v. X–Ray Assocs. of N.M., P.C.*, 1996–NMSC–035, ¶ 40, 121 N.M. 821, 918 P.2d 1321, not a fraudulent concealment case, which barred the plaintiff's claim where the act of malpractice was discovered early in the Section 41–5–13 three-year period. Defendant relies on the rule expressed in *Kern* that to toll the statute under the fraudulent concealment doctrine Plaintiff must show she "did not know, or could not have known through the exercise of reasonable diligence, of [her] cause of action *within the statutory period.*" *Id.* at 456, 697 P.2d at 139 (emphasis added). Plaintiff relies on a statement in *Cummings* that "[f]raudulent conduct *has always provided* equitable grounds for relaxing a statutory time limit." *Id.* ¶ 54 (emphasis added).

{10} In their briefs, neither party adequately analyzes, much less relies on *Garcia v. La Farge*, 119 N.M. 532, 893 P.2d 428 (1995), in regard to the issue at hand. In *La Farge*, in which the plaintiffs alleged fraudulent concealment, the Court regarded the

fraudulent concealment issue as non-dispositive and moot. The Court did not apply equitable estoppel, but, instead, resorted to a constitutional ground on which to permit the plaintiffs' claim where the act of malpractice was not discovered until 85 days before the Section 41–5–13 deadline.

{11} Neither *Kern, La Farge,* nor *Cummings* reached the issue before us in the present case. However, despite their various differences, we give strong weight to what is implicit in those cases.

{12} Implicit in *Kern* is that tolling is not available when the fraudulent concealment of the act of malpractice is discovered within the three-year period. While considered "not dispositive" by *La Farge,* 119 N.M. at 537 n. 1, 893 P.2d at 433 n. 1, the words "within the statutory period" were used by the Court in *Kern* no less than three times in its enunciation of when tolling would be available—a fair reading of which is if a plaintiff who files after the Section 41–5–13 deadline after discovering the act of malpractice within the statutory period, the claim would be barred notwithstanding fraudulent concealment.

■ {13} *La Farge* limits that broad implication from *Kern,* not through application of the doctrine of equitable estoppel, but by resort to a due process rationale permitting an action if the plaintiff is left with an unconstitutionally short period of time within which to file before the Section 41–5–13 deadline. The Court in *La Farge* left unclear why it mooted the issue of fraudulent concealment and did not apply equitable estoppel or equitable tolling, and why it instead resorted to a constitutional ground to decide the issue. Our Supreme Court follows the rule that it will not hold a statute unconstitutional if other grounds exist to dispose of the issue. *See, e.g., Schlieter v. Carlos,* 108 N.M. 507, 510, 775 P.2d 709, 712 (1989) ("It is an

enduring principle of constitutional jurisprudence that courts will avoid deciding constitutional questions unless required to do so. We have repeatedly declined to decide constitutional questions unless necessary to the disposition of the case."). Nevertheless, implicit in *La Farge* is that equitable tolling is not available when a plaintiff discovers the fraudulent concealment of the act of malpractice in adequate time to file the action within the Section 41–5–13 statutory period if ordinary diligence is exercised.

■ {14} *Cummings* makes it patently clear that the Legislature enacted an occurrence rule based on a clear legislative purpose to prevent or alleviate a perceived medical malpractice insurance crisis. *Id.* ¶ 40; *see also Roberts v. Southwest Cmty. Health Servs.,* 114 N.M. 248, 249–50, 837 P.2d 442, 443–44 (1992). The statute sets an outer limit of three years and begins to run from the date of the occurrence of the act of malpractice. *See* § 41–5–13; *Cummings,* 1996–NMSC–035, ¶¶ 10, 46, 48, 57, 121 N.M. 821, 918 P.2d 1321; *Roberts,* 114 N.M. at 250, 837 P.2d at 444. Although not a fraudulent concealment case, implicit in *Cummings* is that because the statute begins to run from the date of the act of malpractice, which is the date the cause of action accrues,[1] fraudulent concealment will not protect the patient when an adequate time remains after discovery within which to file an action and the patient fails to exercise ordinary diligence to file within that time period.

{15} *Cummings* very briefly notes that fraudulent concealment is an exception to the occurrence rule under *Kern* and under *Keithley v. St. Joseph's Hosp.,* 102 N.M. 565, 569, 698 P.2d 435, 439 (Ct.App.1984). *Cummings,* 1996–NMSC–035, ¶ 54, 121 N.M. 821, 918 P.2d 1321. The statement in *Cummings* on which Plaintiff relies, that "fraudulent conduct has always provided equitable grounds

---

1. It should be noted that because the Court in *La Farge* disregarded fraudulent concealment in reaching its result, thus in effect making the case one not involving fraudulent concealment, *La Farge* and *Cummings* (not a fraudulent concealment case) come to opposite determinations regarding the cause of action accrual date. *La Farge* sets the accrual date as the discovery date. *La Farge,* 119 N.M. at 534, 540, 893 P.2d at 431, 436. *Cummings* sets the accrual date as the date of the act of malpractice, *Cummings,* 1996–NMSC–035, ¶ 47, 121 N.M. 821, 918 P.2d 1321, nevertheless noting that *La Farge's* determination that the triggering event of Section 41–5–13, which is determined by the occurrence rule, "is unrelated to the accrual date of the cause of action." *Id.* ¶ 50.

for relaxing the statutory time limit," does not assist Plaintiff. *Id.* The authorities for this statement, *Kern* and *Keithley*, were cases in which the period of fraudulent concealment extended the full three years of Section 41–5–13. *See Cummings*, 1996–NMSC–035, ¶ 54, 121 N.M. 821, 918 P.2d 1321. *Cummings* sheds no light on *La Farge*. It cites *La Farge* merely to say it is another exception to the occurrence rule pursuant to which, under the circumstances in *La Farge*, Section 41–5–13 sets only the "triggering event" and not the accrual date of the cause of action. *Cummings*, 1996–NMSC–035, ¶ 50, 121 N.M. 821, 918 P.2d 1321.

{16} *La Farge* states: "Because equity tolls [Section 41–5–13], it does so only as long as the patient is not guilty of failing to exercise ordinary diligence in pursuit of a cause of action." *Id.* at 536, 893 P.2d at 432. We read this dicta to mean that tolling based on fraudulent concealment cannot be asserted by a plaintiff who discovers the fraudulent concealment of the act of malpractice within the statutory period but fails to exercise ordinary diligence to pursue the cause of action. Still, this does not fully answer the issue in the present case. Questions remain. Is the permitted time within which to file measured by the time remaining before the statutory three-year deadline, as argued by Defendant? Or is it instead measured either by three full years, which is the full time under Section 41–5–13, or by the remaining period plus the period of concealment, as argued by Plaintiff?

■ {17} For our purposes here, the facts in *La Farge* differ from those in the present case only in regard to when the plaintiff discovered the act of malpractice. The plaintiffs in *La Farge* had less than three months within which to file their claim. In stark contrast, Plaintiff in this case had over two years and ten months within which to file and unquestionably could have filed within that time if she had been diligent. Despite the fact that *La Farge* was decided on constitutional grounds and not under equitable estoppel or equitable tolling doctrines, the conclusion we draw from *La Farge* is that where adequate time remains under Section 41–5–13, after discovery of fraudulent concealment of an act of malpractice, to file a claim by exercising ordinary diligence, a claim filed after the three-year Section 41–5–13 deadline will be barred.

{18} Plaintiff turns to legislative intent. She argues that in setting a three-year period, the Legislature intended Section 41–5–13 to define diligence to be a three-year period. We are unpersuaded by this argument. If Section 41–5–13 is truly an occurrence rule intended to apply irrespective of the discovery of the malpractice as long as the patient is not left with an unconstitutionally short time within the three years to file an action, the measurement is whether the plaintiff has adequate time, exercising ordinary diligence, to file the action within the stricture of the Act's occurrence rule. The measurement is not, as under a general statute of limitations such as NMSA 1978, § 37–1–8 (1976), a full three-year time period once the act of malpractice is discovered.[2] Our reading of *Kern*, *La Farge*, and *Cummings* indicates to us that our Supreme Court intends Section 41–5–13 to contain an occurrence rule.

■ {19} Plaintiff also argues that delay from tolling cannot be considered a harm that the Act was intended to prevent, since the Act itself permits tolling pending consideration of the claim by the Medical Review Commission. *See* § 41–5–22. Again, we are not persuaded. Reading the provisions of the Act together, along with how the Supreme Court has interpreted Section 41–5–13

2. We note that the Court in *La Farge*, after holding Section 41–5–13 unconstitutional as applied, applied NMSA 1978, § 37–1–8 (1976) to give plaintiffs, who discover an act of malpractice before the Section 41–5–13 deadline but file their action after that deadline passes, three years after discovery of the act of malpractice within which to file, instead of analyzing the issue of timeliness under a diligence standard. *See La Farge*, 119 N.M. at 542, 893 P.2d at 438. Plaintiff does not suggest that this approach in *La Farge* means Plaintiff should be given three full years from discovery of the fraudulent concealment of the act of malpractice within which to file. We think *La Farge's* application of Section 37–1–8 is limited to the facts and theories of the Court in *La Farge*, and cannot be applied to support Plaintiff's argument, which is premised on equitable estoppel or equitable tolling doctrine.

as a statute of repose containing an occurrence rule, it is reasonable to conclude that the Legislature intended, for policy reasons, to require that a plaintiff exercise ordinary diligence to file within the statutory period if the remaining time is constitutionally adequate. The Legislature also intended, for policy reasons separate from the policy basis underlying the occurrence rule, to permit delay while the matter is submitted to the Medical Review Commission. *See Roberts,* 114 N.M. at 251, 837 P.2d at 445 ("Statutes should be construed so as to facilitate their operation and the achievement of the goals as specified by the legislature."). It is not unreasonable to assume that the Legislature factored in the delay from Commission review when enacting Section 41–5–13 with a view toward limiting the time within which a plaintiff could pursue a cause of action.

{20} In addition, Plaintiff argues that to toll the statute and add the period of concealment on to the statutory deadline will provide needed consistency, a rule certain. She contends that not doing so will require courts to decide in each case whether ordinary diligence was exercised or, as under the *La Farge* analysis, whether a patient had a constitutionally inadequate time within which to file the action. Granted, it may be difficult to arrive at the line that divides adequate and inadequate time and also difficult to judge diligence. While the argument therefore has some sense to it, we nevertheless read our Supreme Court case precedent as telling us that we are to grapple with this tough issue, not avoid it by changing Section 41–5–13 from an occurrence rule to a discovery rule. Other courts have grappled with the dividing line. *See, e.g., Smith v. Cook County Hosp.,* 164 Ill.App.3d 857, 115 Ill.Dec. 811, 518 N.E.2d 336, 340 (1987) (holding that if a reasonable time remains within which to file an action, fraudulent concealment will not toll the running of the statutory period, and stating that "Illinois courts have found that discovery of a claim with as little as five and a half months remaining ... constitutes a reasonable time").

{21} Plaintiff further argues that a full three years from discovery is warranted as a matter of public policy because to hold otherwise would allow Defendant to benefit from fraudulent concealment. "[N]o person may obtain advantage by his own wrong." *Hardin v. Farris,* 87 N.M. 143, 145, 530 P.2d 407, 409 (Ct.App.1974). Under this view, neither equity doctrine nor policy expressed in the Act should protect one who engages in fraud. The New Mexico Trial Lawyers Association, as amicus, advances this as well as additional public policy grounds to support Plaintiff's theory: that to permit equitable tolling resulting in a full three years will discourage fraud and encourage disclosure, encourage extraordinary and diligent effort by the patient to uncover medical concealment, and allow for follow-up remedial medical treatment to avoid unnecessary lawsuits. That a physician is allowed to benefit from fraudulent concealment, or is by legislation encouraged to conceal, gives us some pause.

{22} We agree that fraudulent conduct should not go unpunished. Further, it seems unwise to enact legislation that might encourage fraudulent concealment. Outside the context of occurrence rule legislation with a public policy such as that expressed in the Medical Malpractice Act, to ignore a defendant's fraudulent concealment because a plaintiff failed in equity to act diligently would not ordinarily appear to be a reasonable solution, absent a policy basis clearly less concerned with fraudulent concealment than with another circumstance such as, for example, a medical malpractice insurance crisis. We are, however, deciding this case with the Medical Malpractice Act in existence and with New Mexico Supreme Court analyses and holdings at our immediate doorstep. We have little doubt that the Legislature has the prerogative to permit such apparent disparate treatment of conduct, and it appears to us that our Supreme Court believes the Legislature to have properly exercised that prerogative through the Act.

{23} The stated purpose of the Act "is to promote the health and welfare of the people of New Mexico by making available professional liability insurance for health care providers in New Mexico." § 41–5–2. The Court has stated that "[t]he New Mexico legislature apparently concluded that the potential for a malpractice suit being filed long

after the act of malpractice was one of the reasons that insurance carriers were withdrawing from medical malpractice liability coverage." *Cummings*, 1996–NMSC–035, ¶ 40, 121 N.M. 821, 918 P.2d 1321. According to *Roberts*, "the legislature specifically chose to insulate qualified health care providers from the much greater liability exposure that would flow from a discovery-based accrual date." *Roberts*, 114 N.M. at 252, 837 P.2d at 446.

{24} Further, except for the discrete constitutional analysis in *La Farge*, Section 41–5–13 has withstood considerable constitutional attack. *See Cummings*, 1996–NMSC–035, ¶¶ 42, 43, 50–53, 121 N.M. 821, 918 P.2d 1321 (holding Section 41–5–13 did not violate equal protection or due process and enforcing occurrence rule against non-diligent plaintiff); *La Farge*, 119 N.M. at 538–39, 542, 893 P.2d at 434–35, 438 (affirming the district court's rejection of the plaintiffs' equal protection and special-legislation constitutional challenges); *Kern*, 102 N.M. at 455, 697 P.2d at 138 (confirming that the fact a claim could be barred under the statute before injury or death occurred had been held in a prior case "to violate neither equal protection nor due process"); *Armijo v. Tandysh*, 98 N.M. 181, 184, 646 P.2d 1245, 1248 (Ct.App.1981) (noting that to bar a wrongful death claim where the Section 41–5–13 limitation period ended before death occurred did not violate equal protection or due process and stating that "[a]ny change to be made is a matter for the Legislature").

{25} The clarity and purpose of the occurrence rule as it has evolved from our Supreme Court decisions, together with the fact that our Legislature has not modified Section 41–5–13 during the last twenty-six years, supports the view that Plaintiff's claim is barred under Section 41–5–13. After twenty-six years, the Act remains silent in regard to the effect of fraudulent concealment. We read our Supreme Court's decisions to indicate, if not implicitly to find and enforce, a legislative intent to bar the fraudulent concealment malpractice action of a non-diligent plaintiff who has adequate time during the Section 41–5–13 statutory period within which to file the action.

{26} Furthermore, we are not unaware that, as a practical matter, the effect of fraudulent concealment insofar as prejudice to the patient is concerned is little different than the effect of later discovery of a misdiagnosis or of a latent injury where no fraudulent concealment is involved. Thus, insofar as cause and effect are concerned, as opposed to a relativism analysis of fraudulent conduct weighed against lack of diligence under equity jurisprudence, there appears to be little reason to treat the circumstances differently—if a patient who discovers a misdiagnosis after six months is barred where no fraudulent concealment occurs, as in *Cummings*, then why not also bar the patient who as a result of fraudulent concealment does not discover the act of malpractice for three months, or, as in the present case, forty-nine days? Section 41–5–13 "may be harsh when applied to latent injury cases." *Kern*, 102 N.M. at 455, 697 P.2d at 138. If fraudulent concealment is to change the result, the Legislature should no longer remain silent.

**CONCLUSION**

{27} We affirm the summary judgment entered by the district court.

{28} **IT IS SO ORDERED.**

WE CONCUR: CELIA FOY CASTILLO and IRA ROBINSON, Judges.