2005-NMSC-020

116 P.3d 105

**Patricia TOMLINSON, Plaintiff–Petitioner,**

v.

**Jacob GEORGE, M.D., Defendant–Respondent.**

No. 27,817.

Supreme Court of New Mexico.

June 30, 2005.

Lynn S. Sharp, Jason Bowles, Sharp, Jarmie & Bowles, P.A., Albuquerque, NM, for Petitioner.

Roger Eaton, Michael J. Doyle, Eaton, Martinez, Hart & Valdez, P.C., Albuquerque, NM, for Respondent.

**OPINION**

SERNA, Justice.

{1} Plaintiff–Petitioner Patricia Tomlinson brought a medical malpractice action against Defendant–Respondent Dr. Jacob George. The district court granted George's motion for summary judgment based on the ground that Tomlinson failed to file within the three-year statute of repose period. The Court of Appeals affirmed the district court by unanimous opinion based on several cases from this Court, *Tomlinson v. George,* 2003–NMCA–004, ¶¶ 25, 27, 133 N.M. 69, 61 P.3d 195, and we granted Tomlinson's petition for writ of certiorari to the Court of Appeals.

{2} We address whether the fraudulent concealment doctrine equitably tolls the statute of repose, NMSA 1978, § 41–5–13 (1976), so as to permit Tomlinson to file a malpractice action more than three years after the alleged act of malpractice in light of the fact that she was aware of the act four months into the three-year period and thus had approximately two years and eight months within which to file her claim. Under a direct application of the fraudulent concealment doctrine set out in this Court's opinion in *Kern ex rel. Kern v. Saint Joseph Hospital, Inc.,* 102 N.M. 452, 455–56, 697 P.2d 135, 138–39 (1985), we conclude that the doctrine tolls the statute of repose only when the plaintiff does not discover the alleged malpractice within the statutory period as a result of the defendant's fraudulent concealment. Thus, because Tomlinson was aware of her claim within the statutory period, the statute of repose is not tolled by the doctrine of fraudulent concealment. We take this opportunity to clarify the fraudulent concealment doctrine and Section 41–5–13, as well as to resolve conflicting Court of Appeals' cases on this issue, *compare Tomlinson,* 2003–NMCA–004, ¶ 25, 133 N.M. 69, 61 P.3d 195 (concluding that Section 41–5–13 is not tolled by fraudulent concealment when the malpractice was discovered six weeks into the statutory period), *with Juarez v. Nelson,* 2003–NMCA–011, ¶¶ 22–25, 133 N.M. 168, 61

P.3d 877 (concluding that fraudulent concealment tolls Section 41–5–13 when the malpractice was discovered two weeks into the statutory period).

{3} Finally, we conclude that the district court properly found that Tomlinson had a constitutionally reasonable period of time under the statute of repose within which to file her claim under *Garcia ex rel. Garcia v. La Farge,* 119 N.M. 532, 536–37, 893 P.2d 428, 432–33 (1995) and *Cummings v. X–Ray Associates of New Mexico,* 1996–NMSC–035, ¶¶ 47–55, 121 N.M. 821, 918 P.2d 1321. We conclude that, under these cases, two years and eight months is not an unreasonably short period of time within which to file a claim so as to render Section 41–5–13 unconstitutional as applied. Thus, we affirm the district court and the Court of Appeals.

## I. Facts and Background

{4} Tomlinson fractured and dislocated her wrist in an automobile accident on August 20, 1996. George, an orthopedic surgeon, performed a closed external reduction of the fracture on the day of the injury and applied a cast. George x-rayed Tomlinson's wrist on August 27, October 1, and November 5, and believed that her wrist was healing properly. George did not treat Tomlinson after November 5, 1996. On December 24, 1996, Tomlinson obtained her original x-rays from George taken on the three dates and saw Dr. Alfred Blue, a Seattle-based reconstructive hand surgeon; Blue opined that George had negligently treated Tomlinson. Both Tomlinson and George agree that Tomlinson knew she had a potential medical malpractice claim against George on December 24, 1996. Between February of 1997 and July of 1999, Tomlinson had several surgeries and numerous treatments and evaluations by other physicians.

{5} Tomlinson filed an application with the New Mexico Medical Review Commission on December 13, 1999.[1] Tomlinson filed a complaint against George for medical malpractice on March 2, 2000. George filed a motion for summary judgment based on Tomlinson's failure to file within the three-year limitation period of Section 41–5–13. Tomlinson "accept[ed] that [Section 41–5–13] requires the filing of a claim within three years of an occurrence, and if there had not been [a] fraudulent concealment, the last date to file a claim would have been on November 5, 1999." Tomlinson argued to the district court that George's alleged fraudulent concealment should toll Section 41–5–13 on a day-for-day basis so that the three-year limitation did not run between November 5, 1996, and December 24, 1996. Although the parties, the district court, and the Court of Appeals assumed, for purposes of the fraudulent concealment discussion, that the last possible date of alleged malpractice was on November 5, 1996, Tomlinson contended at oral argument before this Court that the occurrence of alleged malpractice was on August 20, 1996, when George performed a closed external reduction of Tomlinson's wrist. For clarity of the issues, we agree that it is helpful to identify the actual occurrence date for Section 41–5–13 as August 20, 1996, rather than presume the last day that George saw Tomlinson constituted the date of occurrence. Thus, Section 41–5–13 began to run from this date, and Tomlinson had until August 20, 1999, to file her complaint.

{6} In her complaint, Tomlinson alleged that George failed to inform her on August 27, 1996, when he took a second set of x-rays, that her wrist was improperly set, and that his continued assurances that she was healing properly constituted fraudulent concealment. Tomlinson thus alleges that the period of concealment began on August 27 and ended on December 24, 1996, or approximately four months, when she was informed by Blue that she was, in his opinion, negligently treated by George.

{7} The district court noted that Tomlinson was aware of the alleged malpractice on December 24, 1996. The district court discussed *Kern, La Farge,* and *Cummings,* and decided that this Court's opinions in *Cum-*

1. NMSA 1978, § 41–5–22 (1976) provides that "[t]he running of the applicable limitation period in a malpractice claim shall be tolled upon submission of the case for the consideration of the panel and shall not commence to run again until thirty days after the panel's final decision is entered."

*mings* and *Kern* controlled the present case. The district court recognized that *Cummings*, 1996–NMSC–035, ¶ 54, 121 N.M. 821, 918 P.2d 1321, stated "that only in very few exceptional circumstances may this strict three-year occurrence rule of Section 41–5–13 be relaxed," and that fraudulent concealment and a "due process argument" were two of the exceptions noted by *Cummings*. The district court noted that *Kern* "require[s] that the patient not know of his [or her] cause of action within the statutory period," and decided that fraudulent concealment under *Kern* did not toll the statute because Tomlinson discovered the alleged malpractice within the statutory period. Applying the due process analysis of *Cummings* and *La Farge*, the district court judge decided, "Discovery having occurred on December 24, 1996, Ms. Tomlinson was only [six] weeks into a [three]-year period within which to file the claim. I can't determine that [two] years and [forty-six] weeks is 'an unreasonably short period of time within which to bring an accrued cause of action.'" (Quoting *La Farge*, 119 N.M. at 541–42, 893 P.2d at 437–38.) For these reasons, the district court granted summary judgment in George's favor.

## II.  Discussion

### A.  Section 41–5–13 and Fraudulent Concealment

■ {8} Section 41–5–13 provides that "[n]o claim for malpractice arising out of an act of malpractice . . . may be brought against a health care provider unless filed within three years after the date that the act of malpractice occurred." "The statute of repose of the Medical Malpractice Act forecloses any cause of action that does not accrue within three years of the act of malpractice." *Cummings*, 1996–NMSC–035, ¶ 33, 121 N.M. 821, 918 P.2d 1321. "An unduly long statute of repose, or a limit based upon a discovery-based accrual date would place an unfair burden upon the medical profession." *Id.* ¶ 38. "The legislature's solution—rationally related to alleviating [the problem of insurance carriers withdrawing from medical malpractice liability coverage in New Mexico]—was to preclude almost all malprac-

tice claims from being brought more than three years after the act of malpractice." *Id.* ¶ 40. This Court has held that the time limitation of Section 41–5–13 is constitutional. *Id.* ¶ 9. We noted that "[t]he legislature provided a number of incentives to assure participation by health care providers in the burdens of qualification under the Medical Malpractice Act," *id.* ¶ 29, and recognized that a significant benefit of qualification "was the specific decision by the legislature 'to insulate qualified health care providers from the much greater liability exposure that would flow from a discovery-based accrual date.'" *Id.* ¶ 29 (quoting *Roberts v. Sw. Cmty. Health Servs.*, 114 N.M. 248, 252, 837 P.2d 442, 446 (1992)).

Two basic standards determine the beginning of the time period in which a patient must file a claim for medical malpractice. One is sometimes called the "discovery rule." The time period under this rule does not begin to run until the patient discovers, or reasonably should discover, the essential facts of his or her cause of action. This discovery date may be the patient's first subjective awareness that something is wrong—the first feelings of pain or discomfort. The discovery date may also be the first objective confirmation through medical diagnosis that previous medical care was improper. The other standard is sometimes called the "occurrence rule." This rule fixes the accrual date at the time of the act of medical malpractice even though the patient may be oblivious of any harm.

*Id.* ¶ 47. We recognized that the plain language of Section 41–5–13 requires a claim to be filed within three years of the occurrence of the negligent act and that Section 41–5–13 operates as a statute of repose rather than a statute of limitation. *Id.* ¶ 48. "[A] statute of repose terminates the right to any action after a specific time has elapsed, even though no injury has yet manifested itself." *Id.* ¶ 50.

{9} Section 41–5–13's statutorily determined triggering event is, under the occurrence rule, the act of medical malpractice "and does not entail whether the injury has been discovered." *Cummings*, 1996–NMSC–035, ¶ 50, 121 N.M. 821, 918 P.2d 1321. "[I]f,

four years after the occurrence of medical malpractice, a patient learns they have been injured, their claim is forever barred ·because Section 41–5–13 functions as a statute of repose." *Id.* "The plain language of Section 41–5–13 establishes the date of the act of malpractice as the only relevant factor, without any reference to any subsequent harm." *Id.* ¶ 53. The Court noted that "New Mexico appellate courts have consistently construed Section 41–5–13 according to its plain meaning as an occurrence rule." · *Id.* ¶ 51 (relying on *Roberts,* 114 N.M. at 250, 837 P.2d at 444, *Irvine v. St. Joseph Hosp., Inc.,* 102 N.M. 572, 698 P.2d 442 (Ct.App.1984), *Kern,* 102 N.M. at 455, 697 P.2d at 138, and *Keithley v. St. Joseph's Hosp.,* 102 N.M. 565, 698 P.2d 435 (Ct.App.1984)). This Court specifically rejected the plaintiff's argument that "occurrence" should be "a continuum encompassing both the act of malpractice and the resulting injury." *Id.* ¶ 52, 918 P.2d 1321. We noted a few exceptions to this strict rule, as recognized by the district court in the present case, including the doctrine of fraudulent concealment: "Fraudulent conduct has always provided equitable grounds for relaxing a statutory time limit." *Id.* ¶ 54, 918 P.2d 1321 (relying on *Kern,* 102 N.M. at 456, 697 P.2d at 139).

{10} The date that George performed the closed reduction on Tomlinson's wrist, August 20, 1996, is the date that the alleged act of malpractice occurred. Direct application of Section 41–5–13 thus requires Tomlinson to file her suit on or before August 20, 1999. On December 24, 1996, Dr. Blue informed Tomlinson that he believed that George was negligent; thus, Tomlinson was aware of a potential claim for malpractice against George for approximately two years and eight months before the deadline under the statute of repose. Tomlinson filed her application on December 13, 1999, approximately three months and three weeks after the statute of repose deadline.

{11} In order to toll the statute of repose based on the physician's fraudulent concealment, the plaintiff "has the burden ... of showing ... that the physician knew of the alleged wrongful act and concealed it from the patient or had material information

pertinent to its discovery which he [or she] failed to disclose." *Kern,* 102 N.M. at 456, 697 P.2d at 139. *See generally Earle v. Ratliff,* 998 S.W.2d 882, 888 (Tex.1999) (recognizing that, to demonstrate fraudulent concealment, the plaintiff must show the health-care provider actually knew a wrong occurred, had a fixed purpose to conceal the wrong, and did conceal the wrong from the patient). In *Kern,* we concluded that the plaintiff "present[ed] sufficient evidence to raise an issue of material fact regarding [the defendant's] knowledge of excessive radiation having been administered to [the plaintiff]," including dose levels that were "greatly excessive," discontinuation of five additional treatments without explanation, and the defendant's refusal to respond to the plaintiff's question regarding the early termination of treatment. *Id.* at 454, 457, 697 P.2d at 137, 140. In an earlier case, the Court of Appeals addressed fraudulent concealment based on the defendant's and the hospital staff's refusal to answer the patient's question as to why a subsequent operation was necessary and the defendant's later statement that the subsequent operation "was occasioned by negligence of one of the hospital employees." *Garcia v. Presbyterian Hosp. Ctr.,* 92 N.M. 652, 653, 593 P.2d 487, 488 (Ct.App.1979); *see Hardin v. Farris,* 87 N.M. 143, 144, 146, 530 P.2d 407, 408, 410 (Ct.App.1974) (although decided before our Legislature adopted Section 41–5–13, recognizing that mere silence may constitute fraudulent concealment where the defendant negligently performed a tubal ligation and the plaintiffs supported their allegation that the defendant fraudulently concealed the injury with a surgical pathological report located in the patient's file which showed that the tubal ligation was not complete).

{12} In the present case, Tomlinson argues that her claim was timely because Section 41–5–13 was tolled by George's alleged fraudulent concealment based on his assurances that her wrist was healing properly when that was false. George disputed that there was fraudulent concealment on his part. The district court judge noted that Tomlinson based her allegation of fraudulent concealment on these assurances and stated that he did not "believe that this simple

assertion is sufficient to establish a material fact on the question of fraudulent concealment;" however, he stated that the more important issue was his decision that the doctrine of fraudulent concealment did not apply when discovery occurred within the statutory period. We agree with the district court that our precedent as discussed above as well as cases from other jurisdictions addressed allegations establishing fraudulent concealment much more clearly than George's mere assurance regarding Tomlinson's wrist. *See Earle,* 998 S.W.2d at 889 (concluding that the plaintiff's evidence that the physician "must have known that his recommendation of surgery was negligent because it was contraindicated by the objective test results" "shows a difference of opinion ... and raises a question whether [the physician] was negligent, [but] it falls short of showing [the physician's] 'actual knowledge of the fact that a wrong ... occurred' necessary for fraudulent concealment"); *Skuffeeda v. St. Vincent Hosp. & Med. Ctr.,* 77 Or.App. 477, 714 P.2d 235, 238 (1986) ("We think that deliberate deceptive statements differ from merely careless or innocent misleading representations in one important respect. Such an innocent contemporaneous representation must misrepresent something other than the careful performance or the success of the very treatment or operation whose failure is the basis of plaintiff's subsequent complaint.") (quoting *Duncan v. Augter,* 286 Or. 723, 596 P.2d 555, 560 (1978)). However, the Court of Appeals assumed that a genuine issue of material fact exists regarding whether George fraudulently concealed any negligence on his part, *Tomlinson,* 2003–NMCA–004, ¶ 4, 133 N.M. 69, 61 P.3d 195, and for purposes of this appeal, we also assume without deciding that a genuine issue of material facts exists regarding fraudulent concealment.

{13} *Kern* specifically addressed fraudulent concealment and Section 41–5–13 and controls the present matter. In *Kern,* this Court overturned a grant of summary judgment in favor of the defendant in relation to a plaintiff's claim, which was filed approximately two years and six months after the end of the three-year limitation, where there was a genuine issue of material fact that the defendant fraudulently concealed the act of malpractice for the entire three-year period. 102 N.M. at 454, 456–57, 697 P.2d at 137, 139–40. The Court rejected the plaintiff's discovery-based argument "that there is no malpractice until there is injury and that the statute, therefore, should not start to run until the injury has manifested itself in a physically objective manner and is ascertainable." *Id.* at 454, 697 P.2d at 137. However, "New Mexico recognizes the doctrine of fraudulent concealment in medical malpractice cases," which "is based not upon a construction of the statute, but rather upon the principle of equitable estoppel." *Id.* at 455, 697 P.2d at 138. "The theory is premised on the notion that the one who has prevented the plaintiff from bringing suit within the statutory period should be estopped from asserting the statute of limitation as a defense." *Id.* at 455–56, 697 P.2d at 138–39. In order for a patient to toll Section 41–5–13, he or she must demonstrate "that the patient did not know, or could not have known through the exercise of reasonable diligence, of his [or her] cause of action within the statutory period." *Id.* at 456, 697 P.2d at 139. Thus, we held that fraudulent concealment does not toll Section 41–5–13 "if the patient knew, or through the exercise of reasonable diligence should have known, of his [or her] cause of action within the statutory period." *Id.* "If tolled by fraudulent concealment, the statute commences to run again when the patient discovers, or through the exercise of reasonable diligence should have discovered, the malpractice." *Id.* The Court then applied this requirement to the facts presented in that case and held "that petitioner presented sufficient evidence on the issue of [the patient's] unawareness of the cause of action within the statutory period, to overcome a summary judgment motion." *Id.* Thus, not only did this Court, in *Kern,* emphasize that fraudulent concealment does not toll the statute of repose unless the defendant's actions prevented the plaintiff from filing the claim within the statutory period, we applied this requirement to the facts in *Kern.*

{14} Fraudulent concealment is based upon the principle that a defendant

who has prevented the plaintiff from bringing suit within the statutory period should be estopped from asserting the statute of repose as a defense based on equitable estoppel. *Kern*, 102 N.M. at 455–56, 697 P.2d at 138–39. However, if a plaintiff discovers the injury within the time limit, fraudulent concealment does not apply because the defendant's actions have not prevented the plaintiff from filing the claim within the time period and the equitable remedy is not necessary. Stated another way, as a result of the plaintiff's discovery of the cause of action within the time period of Section 41–5–13, the defendant cannot be said to have prevented the plaintiff from bringing suit before the period has expired, and tolling is not required as a matter of equity.

■ {15} Applying *Kern* to this case, Tomlinson must show that she did not know of her cause of action within the statutory period in order to toll the statute of repose. Even assuming that George's assurances regarding Tomlinson's wrist constituted fraudulent concealment, these actions did not prevent Tomlinson from bringing suit within the statutory period. Thus, because George's actions did not prevent Tomlinson from filing her suit within the statutory period, George should not be estopped from asserting the statute of repose as a defense. As it is undisputed that Tomlinson knew of her cause of action for two years and eight months prior to the expiration of the statutory period, Section 41–5–13 is not tolled, and her claim is barred under *Kern*.

■ {16} Both the district court and the Court of Appeals in the present matter reached the same conclusion regarding *Kern*. The Court of Appeals concluded that "[i]mplicit in *Kern* is that tolling is not available when the fraudulent concealment of the act of malpractice is discovered within the three-year period." *Tomlinson*, 2003–NMCA–004, ¶ 12, 133 N.M. 69, 61 P.3d 195. We conclude that *Kern* in fact explicitly holds that the statute of repose is not tolled by fraudulent concealment when the plaintiff knew of his or her cause of action within the statutory period.

{17} The resolution of this case is somewhat complicated by another recent Court of Appeals' published opinion, which, although decided a short time after *Tomlinson*, directly conflicts with *Tomlinson*. *Juarez*, 2003–NMCA–011, n. 4, 133 N.M. 168, 61 P.3d 877 ("We recognize that our understanding of *La Farge* and our approach to fraudulent concealment are in direct conflict with a recent decision[, *Tomlinson*,] of another panel of the Court."). In *Juarez*, the plaintiffs filed a wrongful death action on May 27, 1998, three years after the patient's heart attack but three years and three months after the alleged occurrence of malpractice, arguing that fraudulent concealment should toll the statute of repose. *Id.* ¶¶ 3–5. The Court in *Juarez*, along with Tomlinson in her arguments to this Court, relied on cases from the Court of Appeals which predate Section 41–5–13 and this Court's opinion in *Kern*. *Juarez*, 2003–NMCA–011, ¶¶ 19–21, 133 N.M. 168, 61 P.3d 877. Because both *Hardin*, 87 N.M. at 144, 530 P.2d at 408, and *Garcia*, 92 N.M. at 655, 593 P.2d at 490, were decided under law involving a discovery-based statute of limitations prior to the Legislature's adoption of Section 41–5–13 and to our opinion in *Kern*, they are inapplicable with regard to tolling Section 41–5–13.[2] As this Court recognized in *Cummings*, the Legislature specifically chose an occurrence-based statute of repose rather than a discovery-based statute of limitations for medical malpractice actions. Section 41–5–13 provides for a statute of repose which begins to run when the malpractice occurs, not when the injury is discovered. *Compare Cummings*, 1996–NMSC–035, ¶ 38, 121 N.M. 821, 918 P.2d 1321, *with Garcia*, 92 N.M. at 655, 593 P.2d at 490 (noting that, at the time applicable to *Garcia* and in contrast to the occurrence-based statute of repose, "a cause of action for personal injuries for malpractice begins to run, not from the time of the malpractice, but from the time the injury manifests itself in a

**2.** Although *Garcia* was published in 1979, the act of malpractice occurred in 1972. 92 N.M. at 652, 593 P.2d at 487. The *Garcia* Court addressed NMSA 1978, § 37–1–8 (1976), *id.* at 655, 593 P.2d at 490, a general three year statute of limitation for tort claims that runs from the date of discovery rather than the date of malpractice.

physically objective manner and is ascertainable") (Andrews, J., dissenting) (citation omitted). Thus, these cases cannot be considered a correct statement of New Mexico law regarding Section 41–5–13 and fraudulent concealment.

{18} Although the *Juarez* Court relied on portions of *Kern*, it stated that the requirement that a plaintiff not discover the malpractice within the statutory period in *Kern* was "non-binding dicta, which [has] been overtaken by the Supreme Court's more recent pronouncements in" *La Farge. Juarez*, 2003–NMCA–011, ¶ 17, 133 N.M. 168, 61 P.3d 877. We do not agree with the Court of Appeals' conclusion in *Juarez* that the *Kern* holding was non-binding dicta despite our implication otherwise in *La Farge. Kern* expressly addressed the statute of repose in the context of fraudulent concealment and applied the requirement of non-discovery within the statutory period in its analysis of the facts. Thus, requiring the plaintiff to demonstrate that he or she did not know of the malpractice within the statutory period was necessary to the holding in the case and not dicta. *La Farge*, on the other hand, specifically declined to address the fraudulent concealment claim; thus, we conclude that *La Farge's* discussion of fraudulent concealment was dicta, and, as discussed below, in error. The *Juarez* Court expressed that it had to "choose between competing Supreme Court formulations of the doctrine of equitable estoppel" by following "the more recent statement in *La Farge*" rather than the holding of *Kern. Id.* ¶ 22. *La Farge*, however, did not apply an equitable estoppel analysis; it applied a constitutional analysis. Further, we later limited the *La Farge* due process analysis in *Cummings*, which clarified the Legislature's intent in Section 41–5–13 and held that a plaintiff's knowledge of malpractice for one and one-half years during the statutory period bars her cause of action. We recognize the confusion regarding *Kern* caused by *La Farge* and thus do not fault the Court of Appeals for this determination in *Juarez*; however, based on *Kern*, we conclude that it is necessary to overrule *Juarez*.

{19} Our opinion in *La Farge* has understandably created confusion for the application of *Kern*. For clarity, we emphasize that the fraudulent concealment analysis of *Kern* is distinct and separate from the due process analysis discussed in *La Farge* and *Cummings*. In *La Farge*, we expressly concluded that the fraudulent concealment issue was non-dispositive and moot in a case in which the malpractice was discovered eighty-five days before the running of the statutory time period because we held that such a short period was unconstitutional. 119 N.M. at 537, 893 P.2d at 433. Under a direct application of *Kern*, the plaintiff in *La Farge* would have been barred from bringing his claim because he discovered the malpractice within the statutory period. Rather than apply *Kern* explicitly, we instead noted that *Kern's* phrase, "within the statutory period," was not dispositive because the patient in *Kern* did not discover the concealment until after the statutory period had expired. *Id.* at 537 n. 1, 893.P.2d 428, 893 P.2d at 433 n. 1. This observation was in error. As discussed above, the fact that the plaintiff in *Kern* did not discover the cause of action within the statutory period was dispositive; we held "that [the plaintiff] presented sufficient evidence on the issue of [the patient's] unawareness of the cause of action within the statutory period, to overcome a summary judgment motion." *Kern*, 102 N.M. at 456, 697 P.2d at 139. We note that *La Farge* did not overrule *Kern* and in fact specifically did not reach or apply any fraudulent concealment analysis. *See La Farge*, 119 N.M. at 537 & n. 1, 893 P.2d at 433 & n. 1. Further, because we specifically declined to address the fraudulent concealment issue in *La Farge*, the discussion regarding the issue was dicta. Thus, *Kern* and its analysis regarding fraudulent concealment continues to be good law, supported by this Court's reference to *Kern* in *Cummings*, which was decided after *La Farge*, and we reaffirm *Kern. See Cummings*, 1996–NMSC–035, ¶ 54, 121 N.M. 821, 918 P.2d 1321.

**B.** *La Farge/Cummings* **Substantive Due Process Analysis**

{20} As we concluded above, Section 41–5–13 is not tolled by George's alleged

fraudulent concealment because Tomlinson knew of her cause of action within the statutory period. Because the doctrine of fraudulent concealment does not allow Tomlinson's claim to go forward, we next address whether the district court properly applied the substantive due process analysis of *La Farge* and *Cummings.*

{21} In *La Farge,* we concluded, on constitutional substantive due process grounds, that the plaintiff's claim should be permitted because the negligent act was not discovered until eighty-five days before the statutory deadline. 119 N.M. at 541–42, 893 P.2d at 437–38. "[A] statute of repose that allows an unreasonably short period of time within which to bring an accrued cause of action violates the Due Process Clause of the New Mexico Constitution." *Id.* Thus, this Court concluded that an eighty-five day period was "unreasonably short" under the specific facts of the case so as to violate the plaintiff's due process rights. *La Farge's* due process analysis and "unreasonably short period of time" standard is further delineated by this Court's holding in *Cummings.*

{22} Following *La Farge,* we again examined, at length, due process and Section 41–5–13 in *Cummings.* We addressed Section 41–5–13 in a case in which a defendant negligently missed a cancerous mass on x-rays and the plaintiff filed her claim after the three-year statute of repose expired. *Cummings,* 1996–NMSC–035, ¶¶ 4–9, 121 N.M. 821, 918 P.2d 1321. Fraudulent concealment was not an issue under the facts of *Cummings. Id.* ¶¶ 54, 56. The plaintiff was last treated by the defendant on August 10, 1988, and "[s]he discovered that the masses in her lung and kidney were cancer on February 23, 1990," approximately a year and a half before the limitations period expired. *Id.* ¶ 57. The plaintiff argued that the occurrence rule of the statute of repose violated her due process rights of access to the courts, contending that "a patient may suffer a legitimate injury caused by a verifiable act of malpractice and would nevertheless be barred from legal recovery if the three-year limit runs before the injury becomes evident." *Id.* ¶ 32. We rejected this claim, concluding that "where there is no cause of action, a plaintiff cannot

claim they have been denied access to the courts. And if they have no right of access to the courts, they cannot claim to have been denied due process." *Id.* ¶ 33. We determined that "[a] plaintiff has no expectancy of a cause of action that has been legitimately denied by the legislature before it accrues." *Id.* We also noted that we have allowed a claim to be filed in cases involving "peculiar facts" in which a case conflicts with the filing requirements, and "when a good faith effort has been made to comply with the Act." *Id.* ¶ 56. The Court in *Cummings* noted the holding in *La Farge* that an eighty-five day period of time was "unconstitutionally short." *Id.* ¶ 55. However, we concluded that the plaintiff's period of time, approximately one and one-half years, was not too short a time in which to file her claim. The Court concluded that "[t]he most determinative fact against [the plaintiff] is that she did not exercise diligence when she first learned she had been misinformed about the mass in her lung by [the defendant]." *Id.* ¶ 57. The Court relied on the fact that the plaintiff had approximately one and a half years to file her claim before the statute of repose ran; "[n]evertheless, she sat on her rights and did not file any claim for more than two years." *Id.* The plaintiff "lost her medical malpractice claim through her own lack of diligence." *Id.* "It is irrelevant that the patient loses his or her malpractice claim through blameless ignorance." *Id.* ¶ 59 (quotation marks and quoted authority omitted).

{23} *Cummings* thus demarcates the outer boundary of *La Farge;* we read these cases as complementary rather than conflicting. While *La Farge* holds that a plaintiff who discovers the injury or malpractice during the statutory period as it runs from the occurrence of the negligent act must have a reasonable period of time from the discovery to file his or her claim, *Cummings* concludes that one and one-half years is a constitutionally reasonable period of time within which to file a claim. *See Cummings,* 1996–NMSC–035, ¶ 57, 121 N.M. 821, 918 P.2d 1321. Section 41–5–13 "forecloses any cause of action that does not accrue within three years of the act of malpractice." *Id.* ¶ 33. In other words, a plaintiff that discovers his or her cause of action after three years from the

date of malpractice is barred by Section 41–5–13 from filing a claim; that is the nature of a statute of repose. Thus, we conclude that this precedent resolves that the *La Farge/Cummings* due process analysis must apply only to claims discovered within the statutory period; if a claim is discovered after the statute has run, Section 41–5–13 is an explicit bar. We have recognized "very few exceptional circumstances" to this "strict three-year occurrence rule," including fraudulent concealment. *Cummings,* 1996–NMSC–035, ¶ 54, 121 N.M. 821, 918 P.2d 1321.

{24} Because the fraudulent concealment doctrine does not toll Section 41–5–13 for Tomlinson, and because the district court ruled on the issue, we address whether the due process analysis excuses Tomlinson's late filing. In the present case, the district court determined that, under the substantive due process analysis of *La Farge,* almost three years was not "an unreasonably short period of time within which to bring an accrued cause of action." We agree. Tomlinson had almost the entire statutory period within which to file her claim. In *La Farge,* we concluded that eighty-five days was an unreasonably short period of time. On the other hand, *Cummings* holds that one and one-half years is not too short a time and that a plaintiff who does not file his or her claim in that period of time loses the claim through a lack of diligence. *Cummings,* 1996–NMSC–035, ¶ 57, 121 N.M. 821, 918 P.2d 1321. Thus, under the *La Farge/Cummings* due process analysis, Tomlinson's two years and eight months is a constitutionally reasonable period of time within which to file her claim.

**C. Clarification of Tolling Section 41–5–13 Based on Fraudulent Concealment**

{25} Section 41–5–13 requires plaintiffs to file their claims within three years from the date the malpractice occurs. With Section 41–5–13, the Legislature, in order to alleviate the "unfair burden upon the medical profession" created by a discovery rule, "preclude[s] almost all malpractice claims from being brought more than three years after the act of malpractice." *Cummings,* 1996–

NMSC–035, ¶¶ 38, 40, 121 N.M. 821, 918 P.2d 1321. Fraudulent concealment requires a plaintiff to demonstrate that the defendant physician knew of the alleged negligent act and concealed the negligent act from the patient or had material information pertinent to discovery of the negligent act which the defendant failed to disclose. Fraudulent concealment also requires that the plaintiff demonstrate that he or she did not know, and could not have discovered through the exercise of reasonable diligence, his or her cause of action during the statutory period. If a plaintiff demonstrates these requirements, then the equitable principle of fraudulent concealment tolls Section 41–5–13. We conclude that *Kern* provides authority for a day-for-day tolling of the statute of repose: "If tolled by fraudulent concealment, the statute commences to run again when the patient discovers, or through the exercise of reasonable diligence should have discovered, the malpractice." *Kern,* 102 N.M. at 456, 697 P.2d at 139.

{26} We also reaffirm, however, that the statute of repose is not tolled if the patient knew, or through the exercise of reasonable diligence should have known, of his or her claim within the statutory period. We cannot exercise the equitable principle of fraudulent concealment and deny the defendant's reliance upon Section 41–5–13 where the plaintiff knew of the cause of action within the statutory period. In such circumstances, the defendant's actions did not prevent the plaintiff from pursuing the claim. "The limitations period ... encourages the patient, once the injury has been discovered, to diligently pursue his or her claim." *Cummings,* 1996–NMSC–035, ¶ 41, 121 N.M. 821, 918 P.2d 1321. We believe this expresses the balance required in equity between not allowing a defendant to benefit from fraudulent concealment that prevents a plaintiff from filing a claim while continuing to require the plaintiff to exercise ordinary diligence in pursuit of his or her cause of action. The tolling of the statute based on equitable estoppel is meant to provide the plaintiff with a fair opportunity to pursue his or her cause of action set against the context of "the specific decision by the legislature to insulate qualified health care providers from the much

greater liability exposure that would flow from a discovery-based accrual date," the "most notable benefit of qualification." *Cummings*, 1996–NMSC–035, ¶ 29, 121 N.M. 821, 918 P.2d 1321 (quotation marks and quoted authority omitted). If the plaintiff is aware of his or her claim, or should have been aware through the exercise of reasonable diligence, within the statutory period, the equitable remedy is not applicable. To apply equitable tolling under such circumstances would frustrate the Legislature's intent by effectively replacing the Legislature's statute of repose with a discovery-based statute of limitations.

{27} When the plaintiff discovers the cause of action within three years of the date of malpractice, thereby precluding equitable relief for fraudulent concealment under *Kern*, the plaintiff will necessarily, as a matter of due process, have a reasonable time within which to file a claim, either under the three year limitations period itself or under the *La Farge/Cummings* due process analysis. Thus, the *Kern* fraudulent concealment doctrine applies only to claims discovered after the statutory period has expired. Apart and independent from fraudulent concealment, if a plaintiff discovers the potential claim during the statutory period but has an unreasonably short period of time within which to file, a plaintiff may argue to the district court that Section 41–5–13 is unconstitutional as applied under the *La Farge/Cummings* due process analysis. We conclude that this flexibility provides district courts with some level of discretion to relax Section 41–5–13's strict three-year occurrence rule in unusual cases involving exceptional circumstances as a matter of fairness while upholding the legislative protection for physicians and assuring New Mexicans access to health care.

## III. Conclusion

{28} Tomlinson's cause of action is barred by operation of Section 41–5–13. Applying the fraudulent concealment analysis of *Kern* to the present matter, and assuming that George fraudulently concealed his act of alleged malpractice, we conclude that the principle does not toll the statute of repose because Tomlinson discovered the alleged act of malpractice within the statutory period. Tomlinson's cause of action is barred by Section 41–5–13 because she knew of her cause of action and had over two years and eight months during the statutory period in which to file her claim. George's alleged fraudulent concealment did not prevent Tomlinson from filing her claim within three years from the date of alleged malpractice. Under our separate substantive due process analysis, we conclude that Section 41–5–13 as applied to Tomlinson is not unconstitutional because two years and eight months is an adequate period of time within which to file a claim.

{29} We conclude that the Court of Appeals and the district court did not err by determining that Tomlinson's claim should be dismissed by operation of Section 41–5–13. Thus, we affirm the district court's grant of summary judgment dismissing Plaintiff's claim.

{30} **IT IS SO ORDERED.**

WE CONCUR: PAMELA B. MINZNER, PETRA JIMENEZ MAES, Justices, MICHAEL E. VIGIL, Judge, New Mexico Court of Appeals (sitting by designation), and JAMES HALL, Judge, District Judge (sitting by designation).