ZAMORA, J., dissenting. {27} I agree with the Majority, that in New Mexico due process precludes the application of Section 41-5-13’s strict three-year occurrence rule where malpractice is discovered so close to the expiration of the limitations period, as to effectively prevent the plaintiff from bringing a cause of action. Tomlinson, 2005-NMSC-020, ¶ 21 (“A statute of repose that allows an unreasonably short period of time within which to bring an accrued cause of action violates the Due Process Clause of the New Mexico Constitution.” (alteration, internal quotation marks, and citation omitted)); see Cummings, 1996-NMSC-035, ¶ 55; La Farge, 1995-NMSC-019, ¶ 36; Terry, 1982-NMSC-047, ¶ 1. I also agree that due process will only preclude the application of the three-year occurrence rule in “unusual cases involving exceptional circumstances.” Tomlinson, 2005-NMSC-020, ¶ 27. However, I do not agree that in this case Plaintiff had a constitutionally reasonable amount of time to pursue her cause of action. For that reason, I respectfully dissent. {28} Addressing this issue, our Supreme Court has determined that eighty-five days is a constitutionally unreasonable time within which to file a claim while one and one-half years is constitutionally reasonable. Id. As the Majority points out, the question is open as to whether a period of time between eighty-five days and one and one-half years is constitutionally reasonable. While New Mexico precedent does not provide a specific test to determine whether a plaintiff who discovers a potential claim within the statutory period is left with a constitutionally reasonable period of time to file the claim, in my view, the Court’s analyses in Terry and Cummings are instructive. {29} In Terry, the court held that the application of a statute of repose where the plaintiff’s cause of action accrued approximately three months before the limitations period was set to expire violated due process. Terry, 1982-NMSC-047, ¶ 1. In that case, the court based its determination of a constitutionally unreasonable time frame on its review of legislatively created periods of limitation. See Id. ¶¶ 16-17. The court noted that, for causes of action such as the one in that case, the Legislature had set the period of limitations at three years. Id. ¶ 17. The court also recognized that the Legislature had not specified any period of limitations that was less than one year. Id. The court concluded that “[tjhere is no New Mexico limitations period which would give an aggrieved party less than three months to pursue a claim for personal injury, as [the statute of repose] would do under these facts.” Id. ¶ 16. {30} In Cummings, the court acknowledged several exceptions to the strict application of the three-year occurrence rule under Section 41-5-13, including the exception that applied where late discovery of malpractice leaves an unconstitutionally short period of time to pursue a cause of action. Cummings, 1996-NMSC-035, ¶¶ 55-57. The court concluded that none of the exceptions applied because despite the fact that the plaintiff had eighteen months to pursue her claim, she instead “sat on her rights and did not file any claim for more than two years” after she discovered the malpractice. Id. ¶ 57. The court held that the plaintiff “lost her medical malpractice claim through her own lack of diligence.” {31} In the present case, Plaintiff argues that using the Terry approach, the ten and one-half months she had to file her claim prior to the expiration of the limitations period, was constitutionally unreasonable. Plaintiff compares the ten and one-half month time frame to New Mexico’s legislatively created statutes of limitation, which all provide periods of limitation greater than one year. Defendant, on the other hand, argues that under the Cummings approach, Plaintiffs claim is time barred as a result of her lack of diligence. The Majority does not address either of these arguments or approaches. Instead, the Majority concludes, in hindsight, that this case does not fall within the narrow La Farge/Cummings due process exception to the statute, because Plaintiff should have known Defendant was not a Lovelace doctor, and Plaintiff could have found Defendant’s name earlier by looking on her EOB, her bank statements, or by returning to Defendant’s office. {32} In my view, the Majority fails to consider Plaintiffs diligence in pursuing her claim, especially in light of the entirety of her circumstances. Plaintiff was living in Wyoming on September 22, 2008, when she learned that Defendant had misdiagnosed her. Less than three weeks later, On October 15, 2008, Plaintiff had been diagnosed with widespread ovarian cancer and underwent extensive surgery to remove her uterus and ovaries. Nonetheless, between October 27, 2008 and November 3, 2008, Plaintiff.sent seven medical record requests to Lovelace Hospital and Lovelace contractors attempting to understand what had happened and to obtain her entire medical file, which would include the identity of Defendant. Plaintiff called and was told that there was no record of her visit with Defendant. Plaintiff retained counsel in December 2008, who also requested Plaintiffs medical records, sent several follow up requests, and wrote to Lovelace contractors attempting to obtain information related to Plaintiffs care. {33} Reviewing Plaintiff’s medical records, Plaintiffs counsel discovered that Plaintiff had been assigned three different medical record numbers. Plaintiffs counsel went to Lovelace Women’s Hospital, Lovelace Women’s Clinic, and Lovelace Westside Hospital, and obtained copies of Plaintiffs medical records, which were compared against the contents of Plaintiffs original chart. Lovelace claimed it had made all Plaintiffs records available; however, additional records were later discovered at another Lovelace location. Later still, records were located in the film jacket of Plaintiffs May 2006 ultrasound. {34} The Majority asserts that Plaintiff should have known that Defendant was not a Lovelace doctor based on the fact that there was nothing in the response to Plaintiffs initial records requests related to her visit with Defendant. In light of the disorganization of Plaintiffs Lovelace records, I do not believe this is a fair assumption. The Majority also assumes that Plaintiff could have discovered Defendant’s identity by reviewing an BOB from August 2006, which the Majority insists was “in her control.” However, this is not supported by the record. The EOB for the August 2006 visit was mailed to Plaintiff at an address where she no longer received mail. Even though Plaintiff had filled out a change of address form she testified that she had not received the EOB. Plaintiff requested and received EOBs from Lovelace Health Plan for May, June, and July, but not August 2006. Plaintiff did not actually have the August EOB that identified Defendant until July 2010. {35} Additionally, the Majority assumes Plaintiff could have discovered Defendant’s identity by reviewing her bank statements that showed the co -pay for her visit to Defendant’s office. However, the bank statements did not reveal Defendant’s name. The entry showed a payment to “Sandia OB-GYN Assoc.” At that time, Lovelace used the name “Lovelace Sandia Health System.” It is not necessarily fair to assume that Plaintiff would have reviewed her bank statement two years later and deduce that Sandia OB-GYN was an entirely separate entity from “Lovelace Sandia Health System.” {36} Finally, the Majority assumes that Plaintiff could have returned to the office where she had initially seen Defendant and identified him there. However, Defendant did not practice in that office after February 2007 and there is no indication in the record that Plaintiff would have been able to retrieve any records pertaining to Defendant’s treatment if she had gone to the office. Moreover, Plaintiffwas in New York recovering for eight months after her surgery, and, thereafter, she was traveling back and forth from Wyoming to New York as she continued her follow-up care. It is not reasonable to assume that Plaintiff could have physically gone to the office to track Defendant down. {37} Under La Farge a plaintiff who discovers malpractice “during the statutory period as it runs from the occurrence of the negligent act must have a reasonable period of time from the discovery to file his or her claim.” Tomlinson, 2005-NMSC-020, ¶ 23 (emphasis added). This requirement is rooted in principles of fairness, which are inherent in the Due Process Clauses of the United States and New Mexico Constitutions. La Farge, 1995-NMSC-019, ¶ 36. {38} In my view, it is these principles of fairness that bring this case within the La Farge/Cummings exception. Plaintiff diligently pursued her claim while she faced a grave diagnosis, a serious surgery, an eight-month recovery, and years of continued treatment. While it is unfortunate that Plaintiff did not obtain the August 2006 EOB sooner, she certainly did not sit on her rights. She began investigation of her treatment history immediately after the accrual of her claim. She obtained counsel within three months of the accrual of her claim. She continued her efforts to identify Defendant after the filing of the complaint and amended her complaint three days after finally learning Defendant’s name. {39} For these reasons I believe that ten and one-half months was an unreasonably short time for Plaintiff to name Defendant in her complaint. I would affirm the district court’s decision. I also believe it is worth noting that in both Terry and La Farge, where the court found that the plaintiffs had a constitutionally unreasonable time to pursue their claims, the court applied the three-year limitation period that would have been applicable if the statute of repose had not been enacted. See Terry, 1982-NMSC-047, ¶ 17; see also La Farge, 1995-NMSC-019, ¶ 37. M. MONICA ZAMORA, Judge