**Certiorari Denied, December 11, 2013, No. 34,420**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2014-NMCA-014**

**Filing Date: October 17, 2013**

**Docket No. 32,719**

**JOSE R. CHAVEZ, JR., son, individually
and as representative of JOSE R. CHAVEZ,
deceased, SOCORRO CHAVEZ, widow,
WILFRED CHAVEZ, MICHAEL CHAVEZ,
and CLARENCE CHAVEZ, remaining adult
sons of the deceased,**

      **Plaintiffs-Appellees,**

**v.**

**JAMES DELGADO, M.D. d/b/a POJOAQUE
PRIMARY CARE, individually,**

      **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY
Raymond Z. Ortiz, District Judge**

Crowley & Gribble, P.C.
Clayton E. Crowley
Albuquerque, NM

for Appellees

Yenson, Allen & Wosick, P.C.
Terrance P. Yenson
April D. White
Albuquerque, NM

for Appellant

**OPINION**

1

**VANZI, Judge.**

**{1}** As a matter of first impression, we must decide when the three-year time limitation contained in the Medical Malpractice Act (MMA), NMSA 1978, §§ 41-5-1 to -29 (1976, as amended through 2008), begins to run in a case where a health care provider is alleged to have negligently prescribed medication to a patient. *See* § 41-5-13. Defendant Dr. Delgado sought interlocutory review from this Court following the district court's denial of his motion for summary judgment. The district court determined that the statute of limitations did not begin to run until a patient has been injured. In the alternative, the district court found that the malpractice continued throughout the ingestion period of the prescribed medication and that, therefore, Section 41-5-13 did not begin to run until the ingestion period had expired. We disagree and hold that Section 41-5-13's three-year time limitation begins to run on the date the medication is prescribed. Accordingly, we reverse the district court's denial of summary judgment.

**BACKGROUND**

**{2}** The parties do not dispute the material facts of the case. On November 11, 2008, the decedent patient, Jose R. Chavez (Mr. Chavez), requested a prescription for Zocor. That same day, Dr. Delgado approved and wrote Mr. Chavez a prescription for Simvastatin, the same drug as Zocor. The next day, Dr. Delgado's office called the prescription in to Mr. Chavez's pharmacy. Mr. Chavez did not fill the prescription until three weeks later, on December 3, 2008. Shortly thereafter, on December 8, 2008, Mr. Chavez was hospitalized with drug-induced rhabdomyolysis, purportedly caused by an interaction of the Simvastatin and another medication Mr. Chavez was taking. Mr. Chavez was released from the hospital on January 12, 2009. He died on February 21, 2010.

**{3}** On December 1, 2011, Plaintiffs brought a medical malpractice and wrongful death action against Dr. Delgado, based on the allegedly negligent act of prescribing Simvastatin. The parties agree that Dr. Delgado is a "qualified healthcare provider" as defined by Sections 41-5-3 and 41-5-5 of the MMA and that the mandates of the MMA govern the dispute. Dr. Delgado filed a motion for summary judgment in the district court, asserting that the three-year statute of repose contained in Section 41-5-13 barred Plaintiffs' claims. The district court denied the motion, and this appeal timely followed.

**DISCUSSION**

**{4}** We review a district court's decision to grant or deny summary judgment de novo. *Maralex Res., Inc. v. Gilbreath*, 2003-NMSC-023, ¶ 8, 134 N.M. 308, 76 P.3d 626; *Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582. Where genuine issues of material fact exist, summary judgment is inappropriate. *See Self*, 1998-NMSC-046, ¶ 6. However, when no material issues of fact are in dispute, we determine de novo whether a party is entitled to judgment as a matter of law. *Id.* In addition, "[s]tatutory interpretation is an issue of law, which we review de novo." *N.M. Indus. Energy Consumers*

*v. N.M. Pub. Regulation Comm'n*, 2007-NMSC-053, ¶ 19, 142 N.M. 533, 168 P.3d 105.

**{5}** Dr. Delgado argues on appeal that the district court erred in its determination that the three-year statute of repose did not begin to run until either: (1) Mr. Chavez had been injured, or (2) the last day Mr. Chavez ingested the prescribed medication. Rather, Dr. Delgado contends that the statute of repose began to run on either the date he wrote the prescription, on November 11, 2008, or, at the latest, the date his office called in the prescription to the pharmacy, on November 12, 2008. Thus, Dr. Delgado contends that the complaint filed on December 1, 2011, was outside of the three-year limitations period provided under the MMA. We begin with the statute.

**{6}** Section 41-5-13 requires that a malpractice claim be "filed within three years after the date that the act of malpractice occurred." Our Supreme Court has noted that "Section 41-5-13 operates as a statute of repose rather than a statute of limitation." *Tomlinson v. George*, 2005-NMSC-020, ¶ 8, 138 N.M. 34, 116 P.3d 105. In *Cummings v. X-Ray Associates of New Mexico, P.C.*, the Court commented on the difference between the statutes of limitation and statutes of repose, explaining that

> [a] statute of limitations establishes the time, after a cause of action arises, within which a claim must be filed. A statute of limitations begins to run when the cause of action accrues, the accrual date usually being the date of discovery [of the injury] . . . .
>
> On the other hand, a statute of repose terminates the right to any action after a specific time has elapsed, even though no injury has yet manifested itself. A statute of repose runs from a statutorily determined triggering event.

1996-NMSC-035, ¶¶ 49-50, 121 N.M. 821, 918 P.2d 1321 (citations omitted).

**{7}** Furthermore, our courts have consistently held that "[t]he triggering event of Section 41-5-13 is determined by the occurrence rule. This event is unrelated to the accrual date of the cause of action, and does not entail whether the injury has even been discovered." *Cummings*, 1996-NMSC-035, ¶ 50. Thus, the cause of action that triggers Section 41-5-13 begins to run from the act of malpractice. *Cummings*, 1996-NMSC-035, ¶ 53. Against this backdrop, we consider the sole issue presented in this case: what constitutes an "act of malpractice" for purposes of Section 41-5-13 when a physician negligently prescribes a medication to a patient?

**{8}** Here, the district court found that an act of malpractice does not exist until there is an injury, regardless of whether the injury is discovered. Specifically, it found that the statute of repose could not begin to run when Dr. Delgado prescribed Mr. Chavez the Simvastatin because Mr. Chavez did not and could not suffer any injury until he actually started taking the Simvastatin and because there was no completed tort until at least that time.

3

**{9}** In reaching its decision, the district court was apparently persuaded by Plaintiffs' argument that the foundation for the triggering event is set forth in Section 41-5-3(C)'s definition of "malpractice claim." *See id.* (stating that " 'malpractice claim' includes any cause of action arising in this state against a health care provider for medical treatment, lack of medical treatment or other claimed departure from accepted standards of health care which proximately results in injury to the patient"). In its oral ruling, the court stated that this case was "a causation question" and that there appeared to be "an issue of causation." However, to the extent that the district court adopted Plaintiffs' argument and held that there must be an action "which proximately results in injury to the patient" in order for Section 41-5-13 to begin to run, our courts have explicitly rejected such an accrual-based approach to interpreting the statute. *See* § 41-5-3(C); *Cummings*, 1996-NMSC-035, ¶ 50 (stating that the triggering event of Section 41-5-13 is unrelated to the accrual date of the cause of action); *Garcia ex rel. Garcia v. La Farge*, 1995-NMSC-019, ¶ 14, 119 N.M. 532, 893 P.2d 428 (same). More importantly, the language of Section 41-5-13 clearly establishes the triggering event as an "act of malpractice," not a "malpractice claim." *See* § 41-5-13 ("No claim for malpractice arising out of an act of malpractice . . . may be brought against a health care provider *unless filed within three years after the date that the act of malpractice occurred*." (emphasis added)).

**{10}** Because the Legislature defined the term "malpractice claim" elsewhere within Section 41-5-13, but chose not to use that term in establishing the time limitation for bringing a claim, we must presume that it intended the phrase "act of malpractice" to have a different meaning. *See Medina v. Holguin*, 2008-NMCA-161, ¶ 14, 145 N.M. 303, 197 P.3d 1085 ("[A] court must look to the neighboring words in a statute to construe contextual meaning."); *Cummings*, 1996-NMSC-035, ¶¶ 14, 52 (rejecting the plaintiff's attempt to "draw an identity" between an act of malpractice and the way the MMA defines a malpractice claim). We thus consider the meaning of "act of malpractice" in the context of Section 41-5-13.

**{11}** Unlike "malpractice claim," the phrase "act of malpractice" is not statutorily defined. It is well established that "[t]he words of a statute, including terms not statutorily defined, should be given their ordinary meaning absent clear and express legislative intention to the contrary." *State v. Ogden*, 1994-NMSC-029, ¶ 24, 118 N.M. 234, 880 P.2d 845. An "act" is "[s]omething done or performed[.]" *Black's Law Dictionary* 27 (9th ed. 2009); *see* Restatement (Second) of Torts § 2 (1965) ("The word 'act' is used throughout the Restatement of this Subject to denote an external manifestation of the actor's will and does not include any of its results, even the most direct, immediate, and intended."). "Malpractice," on the other hand, is "[a]n instance of negligence or incompetence on the part of a [health care provider]." *Black's Law Dictionary* 1044 (9th ed. 2009). Interpreting the "act of malpractice" to extend to either the first or last day of the patient's ingestion period, as Plaintiffs suggest and the district court held, would require us to define an "act of malpractice" based on the patient's compliance with the directives of her health care provider. In our view, such a reading is contrary to our well-established case law and leaves open the possibility that a non-health care provider—here, Mr. Chavez—can reclassify the

4

date of the *act* of malpractice based on the patient's conduct and not that of the health care provider. We do not believe that is what the Legislature intended when it enacted the MMA. Accordingly, in keeping with the plain meaning of the statute, we hold that in a wrongful prescription case, the term "act of malpractice" refers to the discrete act taken by the health care provider of prescribing medication to a patient, not to any subsequent act of the patient.

**{12}** Moreover, in *Cummings*, our Supreme Court rejected a similar argument that an injury must exist before the limitations period in Section 41-5-13 can begin to run. In that case, the plaintiff argued that the term "occurrence" contained in Section 41-5-13 should be construed as a continuum that encompasses both the act of malpractice and the resulting injury. *Cummings*, 1996-NMSC-035, ¶ 13. The plaintiff characterized the negligent act as the misdiagnosis of a cancerous mass in her lung and the resulting injury as the metastasis of her cancer. *Id.* ¶ 15. Our Supreme Court declined to accept plaintiff's characterization and instead viewed the negligent act and the resulting injury as discrete events. *Id.* ¶ 52. *Cummings* instructs that the term "occurred" contained in Section 41-5-13 "does not inquire into whether the act [of malpractice] caused an injury, whether the injury is immediate or latent, whether the injury is discovered or not. The focus of this term is on the act without regard to its consequences." *Cummings*, 1996-NMSC-035, ¶ 52.

**{13}** On appeal, Plaintiffs attempt to distinguish *Cummings*. They contend that, because the plaintiff's cancer in that case existed at the time of the alleged misdiagnosis, she was already injured on the date that the physician committed the alleged act of malpractice. Plaintiffs argue that this case is different from *Cummings* because Mr. Chavez could not possibly suffer any injury until he began taking the Simvastatin, three weeks after Dr. Delgado prescribed the medication. This distinction does not change our analysis and is a distinction without a difference. The *Cummings* Court made clear that the "act of malpractice" in Section 41-5-13 is separate from the plaintiff's injuries, regardless of when those injuries arose. *See Cummings*, 1996-NMSC-035, ¶ 53 ("The plain language of Section 41-5-13 establishes the date of the act of malpractice as the only relevant factor, without any reference to any subsequent harm.").

**{14}** The principles on which the *Cummings* Court relied, as well as the manner in which subsequent cases have interpreted the term "act of malpractice," also dictate that the "act of malpractice" is a discrete event. "The purpose of a statute of repose is to put an end to prospective liability for wrongful acts that, after the passage of a period of time, have yet to give rise to a justiciable claim." *Jaramillo v. Heaton*, 2004-NMCA-123, ¶ 12, 136 N.M. 498, 100 P.3d 204 (alteration, internal quotation marks, and citation omitted). Although the time limit can have harsh results, our courts have repeatedly found that the stringent time restriction on liability that Section 41-5-13 imposes is one of the key benefits the Legislature provided to health care providers when it enacted the MMA. *See Cummings*, 1996-NMSC-035, ¶ 29 (noting that "[t]he most notable benefit of qualification [under the MMA] was the specific decision by the [L]egislature to insulate qualified health care providers from the much greater liability exposure that would flow from a discovery-based accrual date" (internal quotation marks and citation omitted)). Accordingly, the Legislature's goal in

5

enacting Section 41-5-13 was "to preclude almost all malpractice claims [subject to the MMA] from being brought more than three years after the act of malpractice." *Cummings*, 1996-NMSC-035, ¶ 40. We recognize that there are limited exceptions that may relax the strict requirements of Section 41-5-13, such as fraudulent concealment of a claim, or an unreasonable time limit in which to file a claim. *See generally Tomlinson*, 2005-NMSC-020, ¶¶ 22-23; *Cummings*, 1996-NMSC-035, ¶¶ 54-56; *Garcia*, 1995-NMSC-019, ¶¶ 37-38. None of those exceptions are at issue here. As a result, we follow our Supreme Court's interpretation of Section 41-5-13 that has rejected any attempt to extend the statute of repose beyond three years in order to include a chain of events or a continuing course of treatment. *See Tomlinson*, 2005-NMSC-020, ¶¶ 2, 4, 10 (noting that the "act of malpractice" occurred when a doctor performed a closed external reduction of the plaintiff's fracture, even where the same doctor provided follow-up care to the plaintiff related to the fracture). Similarly, we believe defining an "act of malpractice" to accommodate a patient's potential delay in filling a prescription, or to extend through the patient's ingestion period, would expand the possible window of liability beyond what the Legislature intended in enacting Section 41-5-13, and we will not adopt such an interpretation. *See Padilla v. Montano*, 1993-NMCA-127, ¶ 23, 116 N.M. 398, 862 P.2d 1257 ("We will not construe a statute to defeat [its] intended purpose.").

**{15}** Finally, our determination that the "act of malpractice" in negligent prescription cases is the health care provider's discrete act of prescribing the at-issue medication is consistent with rulings in other states. Although we rely solely on New Mexico law in reaching our conclusion here, we note that several other states with occurrence-based statutes have arrived at similar results. *See Tullock v. Eck*, 845 S.W.2d 517, 521 (Ark. 1993) (finding that the allegedly negligent act occurred when the doctor wrote the prescription and declining to apply the continuous treatment theory); *Deen v. Pounds*, 718 S.E.2d 68, 73 (Ga. Ct. App. 2011) (finding that the statute of repose began to run on the date doctor first prescribed the at-issue medication); *Cornell v. Merck & Co.*, 742 P.2d 667, 668 (Or. Ct. App. 1987) (holding that where statute states malpractice action may not be brought more than five years after treatment, the date on which the complaint alleged medication was prescribed was the date statute began to run).

**{16}** We agree with Dr. Delgado that Section 41-5-13 terminates a plaintiff's malpractice claim within three years after the date the alleged act of malpractice occurred, not when the plaintiff was injured by the malpractice or when the plaintiff acquired knowledge of the injury. Accordingly, we conclude that Section 41-5-13 began to run on the date Dr. Delgado prescribed Simvastatin to Mr. Chavez. Because Plaintiffs did not timely file the complaint within the three-year limitations period—regardless of whether the trigger date was November 11, 2008, the date on which the prescription was written, or November 12, 2008, the date on which the prescription was called in to the pharmacy—their claims against Dr. Delgado are barred.

**CONCLUSION**

**{17}**    We reverse the district court's order denying Dr. Delgado's motion for summary judgment.

**{18}    IT IS SO ORDERED.**

_____
**LINDA M. VANZI, Judge**

**WE CONCUR:**

_____
**CYNTHIA A. FRY, Judge**

_____
**J. MILES HANISEE, Judge**

**Topic Index for *Chavez v. Delgado*, No. 32,719**

**APPEAL AND ERROR**
Interlocutory Appeal
Standard of Review

**CIVIL PROCEDURE**
Statute of Limitations
Summary judgment

**NEGLIGENCE**
Wrongful Death

**TORTS**
Medical Malpractice
Wrongful Death