**Certiorari Granted, July 17, 2015, No. 35,302**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2015-NMCA-078**

**Filing Date:  April 30, 2015**

**Docket No. 33,087**

**SARA CAHN,**

        **Plaintiff-Appellee,**

**v.**

**JOHN D. BERRYMAN, M.D.,**

        **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Nan G. Nash, District Judge**

Law Offices of Felicia C. Weingartner, P.C.
Felicia C. Weingartner
Albuquerque, NM

Terry M. Word, P.C.
Terry M. Word
Albuquerque, NM

Law Office of Cid D. Lopez LLC
Cid D. Lopez
Albuquerque, NM

Carmela D. Starace
Albuquerque, NM

for Appellee

Hinkle, Hensley, Shanor & Martin, LLP
William P. Slattery
Dana S. Hardy
Santa Fe, NM

Butt Thornton & Baehr PC
Emily A. Franke
Albuquerque, NM

for Appellant

**OPINION**

**VIGIL, Chief Judge.**

**{1}**     This is a medical malpractice action against a qualified healthcare provider under the Medical Malpractice Act, NMSA 1978, §§ 41-5-1 to -29 (1976, as amended through 2008). When Plaintiff learned she had a malpractice claim against Defendant, ten and one-half months remained under the Act's three-year statute of repose to sue Defendant. Section 41-5-13. The question posed is whether this was a constitutionally reasonable period of time for Plaintiff to file her lawsuit against Defendant. Because we conclude that, consistent with due process, Plaintiff had a reasonable period of time to sue Defendant, and Defendant was not named until eleven months after the statute of repose expired, Plaintiff's suit against Defendant is barred. The district court having ruled otherwise, we reverse.

**BACKGROUND**

**{2}**     On May 17, 2006, Plaintiff, Sara Cahn, went to the emergency room of Lovelace Women's Hospital complaining of abdominal and pelvic pain. Plaintiff received a pelvic ultrasound on May 19, 2006, at Lovelace West Mesa Medical Center, and the ultrasound report stated that there was a complex mass on Plaintiff's left ovary and noted that "[a] malignancy need[ed] to be excluded." Plaintiff was twenty-seven years old.

**{3}**     The one and only time Plaintiff was seen by Defendant, Dr. Berryman, was on August 8, 2006, to review the ultrasound report that Plaintiff hand carried to the appointment and gave to Defendant. Defendant did not disclose to Plaintiff the findings contained in the ultrasound report. Instead, Defendant examined Plaintiff and diagnosed her with endometriosis and prescribed approximately three months of suppressive therapy (contraceptive patches) to treat her symptoms.

**{4}**     Plaintiff used her debit card to pay the $30 co-payment to Sandia OB/GYN, Defendant's employer, and Plaintiff's insurer, Lovelace Health Plan, mailed her an Explanation of Benefits (EOB) form dated August 23, 2006, which identified Defendant as the doctor Plaintiff saw on August 8, 2006. The EOB form was mailed to an address where Plaintiff no longer lived, but her mail was being forwarded to where she was living.

**{5}**     Plaintiff moved to Wyoming and saw Dr. Mary Girling on September 22, 2008, for continuing abdominal pain. Dr. Girling reviewed the May 19, 2006, ultrasound report, and told Plaintiff of the ultrasound findings. Plaintiff now knew she had a medical malpractice

claim against Defendant. Further tests confirmed Plaintiff had ovarian cancer, and over the next three and one-half months, Plaintiff underwent surgery and treatment in New York and Boston, which included a total hysterectomy to remove her uterus and ovaries. Plaintiff hired counsel in December 2008 to pursue her malpractice claim against Defendant.

{6}     Plaintiff did not know Defendant's name. Despite Plaintiff's efforts and those of her attorneys, which we describe in more detail below, Plaintiff first learned of his name after requesting complete copies of her insurer's EOB forms after the statute of repose expired in June or July 2010. In response to the request, an EOB form was produced on July 1, 2010, showing that Defendant, as an employee of Sandia OB/GYN, saw Plaintiff on August 8, 2006. Plaintiff's bank statements, which Plaintiff had not reviewed until the EOB form was produced, revealed the $30 transaction payable to Defendant's employer, Sandia OB/GYN, in August 2006. At all times, Plaintiff had used the checking account and had access to her online bank statements. Plaintiff also gave a deposition on June 3, 2010, after the statute of repose expired, describing where Defendant's office was located, but Plaintiff never went to that location to ascertain Defendant's name. Thus, Plaintiff had ten and one-half months from the date that she discovered she had a malpractice claim against Defendant to learn of his name. However, it was not until eleven months after the three-year statute of repose expired that Plaintiff discovered Defendant's identity. And she discovered it using information which was available to Plaintiff from the time Plaintiff first learned she had a malpractice claim against Defendant.

{7}     These facts notwithstanding, Plaintiff asserts that her diligence in attempting to learn of Defendant's name "was thwarted by a confusing medical record system that prevented her from identifying a doctor that for all practical purposes appeared to be a Lovelace provider[,]" and Plaintiff admits that "her inadvertent mistake was assuming that she was looking for a Lovelace doctor." Plaintiff's confusion was understandable.

{8}     At the pertinent time, Lovelace Health System, Inc. (Lovelace), which was previously called Lovelace Sandia Health System, was a licensed healthcare provider composed of several hospitals and medical centers, and Plaintiff was insured by Lovelace Health Plan. Plaintiff originally went to the emergency room at Lovelace Women's Hospital, which was part of Lovelace, and the pelvic ultrasound was performed at Lovelace West Mesa Medical Center, which was also part of Lovelace. Plaintiff's original appointment to discuss the ultrasound report was with a doctor at Lovelace Women's Hospital, but it was cancelled, and when Plaintiff called Lovelace Women's Hospital to reschedule the appointment, Lovelace Women's Hospital provided her with Defendant's name. Defendant saw Plaintiff in an office located in the Lovelace Women's Hospital Building. Defendant, however, was not a Lovelace doctor. He was employed by Sandia OB/GYN, a separate entity owned and operated by Dr. Carl Conners, in the Lovelace Women's Hospital building.

{9}     Plaintiff attempted to collect her medical records from Lovelace to identify the doctors that treated her. She undertook these efforts from September through November 2008, while undergoing treatment and recovery from the cancer. Plaintiff sent eight letters

requesting her records from Lovelace Women's Health, Lovelace Westside Hospital, and Lovelace Women's Health/ABQ Health Partners. Believing she visited the doctor only one or two months after the ultrasound, Plaintiff requested Lovelace Health Plan EOB records for May, June, and July 2006, but not August 2006. None of the records reflected Plaintiff's August 8, 2006, visit or the name of the doctor that examined her.

{10}     Plaintiff also called Lovelace Women's Hospital and talked to an employee about the missing record. The Lovelace employee reviewed Plaintiff's records and confirmed there was no record of the August 8, 2006, visit. Plaintiff also described Dr. Berryman, and the employee volunteered that it might be another doctor. The Lovelace employee checked that doctor's records, but there was no record of Plaintiff's visit.

{11}     Plaintiff's counsel, retained in December 2008, also proceeded to collect Plaintiff's medical records from Lovelace entities. Plaintiff's counsel sent requests to Lovelace Westside OB/GYN, Lovelace Women's Hospital, Lovelace Westside Hospital, and Lovelace Sandia Health System physician billing and business office in December 2008 and January 2009. Plaintiff's counsel also contacted contractors that have records and billing information directly related to Lovelace. Plaintiff's counsel requested medical charts and itemized billings from May 17, 2006, until February 4, 2011. None of the documents received included Plaintiff's August 8, 2006, visit with Dr. Berryman.

{12}     Plaintiff filed her complaint on April 10, 2009, naming Lovelace, five doctors employed by Lovelace, and "John Doe" as defendants. "John Doe" was identified as "a physician who [may have] provided care to [Plaintiff] whose identity cannot be ascertained at this time[.]" Fourteen months later in June 2010, Plaintiff subsequently filed a discovery request for all her EOB records from Lovelace Health Plan. Those records, which Plaintiff received on July 1, 2010, disclosed Defendant's name, and Plaintiff filed an amended complaint on July 9, 2010, naming Defendant and Sandia OB/GYN as Defendants. Defendant did not know of the litigation until July 16, 2010, when he was served.

{13}     Defendant moved for summary judgment, arguing that the three-year statute of repose expired on August 8, 2009, barring Plaintiff's claim. The district court denied the motion, ruling that the three-year time bar "violates Plaintiff's substantive due process rights under the United States Constitution and New Mexico Constitution[.]" Following additional discovery, Defendant filed a motion to reconsider, which the district court denied.

{14}     The parties then entered into a stipulated conditional directed verdict, which was approved by the district court. Therein, the parties agreed and stipulated that if the three-year statute of repose bars Plaintiff's claims against Defendant, she cannot recover, but if Plaintiff's claims are not time-barred, Defendant is liable to Plaintiff on her claims of medical malpractice. The parties further stipulated and agreed to entry of a directed verdict against Defendant in the amount of $700,000, plus interest, subject to Defendant's right to appeal the district court order that the three-year statute of repose violates Plaintiff's right to substantive due process. The district court filed the stipulated judgment, and Defendant

appeals. *See Kysar v. BP Am. Prod. Co.*, 2012-NMCA-036, ¶ 17, 273 P.3d 867 (concluding that an appeal will lie from a stipulated conditional judgment when specific conditions are satisfied).

**DISCUSSION**

**{15}** The Medical Malpractice Act aims "to promote the health and welfare of the people of New Mexico by making available professional liability insurance for health care providers in New Mexico." Section 41-5-2. One way in which the Act seeks to accomplish this goal is by establishing a "termination point" for medical malpractice claims. *Cummings v. X-Ray Assocs. of N.M., P.C.*, 1996-NMSC-035, ¶¶ 38-41, 121 N.M. 821, 918 P.2d 1321. That termination point is set forth in the Act's three-year statute of repose, which states,

> No claim for malpractice arising out of an act of malpractice which occurred subsequent to the effective date of the Medical Malpractice Act may be brought against a health care provider unless filed within three years after the date that the act of malpractice occurred[.]

Section 41-5-13. The statute is an "occurrence" based rule, meaning the time period for filing a lawsuit begins to run at the time of the malpractice without regard to when the underlying cause of action accrues and without regard to discovery of the injury or damages. *Cummings*, 1996-NMSC-035, ¶ 50; *Garcia ex rel. Garcia v. La Farge*, 1995-NMSC-019, ¶ 14, 119 N.M. 532, 893 P.2d 428. *See Chavez v. Delgado*, 2014-NMCA-014, ¶¶ 5, 11, 316 P.3d 907 (concluding that the statutory "act of malpractice" for negligently prescribing medication is the discrete act of prescribing medication to the patient, not the date of injury or the last day the medication was taken), *cert. denied*, 2013-NMCERT-012, 321 P.3d 126; *Meza v. Topalovski*, 2012-NMCA-002, ¶ 19, 268 P.3d 1284 (stating that *Cummings* has interpreted Section 41-5-13 as an occurrence-based statute of repose rather than a discovery-based statute of limitations, and that "[t]he limitations period runs from the date of the occurrence, as opposed to the date of discovery," and terminates the right of any action after the three years has elapsed even if no injury has manifested itself). Unlike a statute of limitation, which does not begin to run until the patient discovers, or reasonably should discover, the malpractice, "a statute of repose terminates the right to any action after a specific time has elapsed, even though no injury has yet manifested itself." *Cummings*, 1996-NMSC-035, ¶¶ 47, 50. The statute of repose "put[s] an end to prospective liability for wrongful acts that, after the passage of a period of time, have yet to give rise to a justiciable claim." *La Farge*, 1995-NMSC-019, ¶ 14.

**{16}** The Legislature may impose a statutory time deadline for commencing a cause of action as long as a reasonable time is provided for commencing suit. *La Farge*, 1995-NMSC-019, ¶ 33. However, if a plaintiff is left with an unconstitutionally short period of time to file suit within the period of the statute of repose, due process is violated. *Id.* ¶ 26. The question presented in this case is whether Plaintiff had a reasonable period of time, consistent with due process, within which to bring her suit against Defendant.

5

**Standard of Review**

**{17}**     Whether Plaintiff was deprived of due process presents a question which we review de novo. *See Martinez v. Pub. Emps. Ret. Ass'n*, 2012-NMCA-096, ¶ 27, 286 P.3d 613; *Los Chavez Cmty. Ass'n v. Valencia Cnty.*, 2012-NMCA-044, ¶ 12, 277 P.3d 475. In addition, we review de novo a district court order granting or denying a motion for summary judgment. *Chavez*, 2014-NMCA-014, ¶ 4.

**Analysis**

**{18}**     We begin with *Terry v. New Mexico State Highway Commission*, 1982-NMSC-047, ¶ 9, 98 N.M. 119, 645 P.2d 1375, *abrogated on other grounds by Coleman v. United Engineers & Constructors, Inc.*, 1994-NMSC-074, 118 N.M. 47, 878 P.2d 996, in which the cause of action accrued three months before the applicable statute of limitations expired, and the lawsuit was filed after the statute of limitations expired. Our Supreme Court declared that it was required to decide "whether a cause of action, once accrued, may be barred by a period so short that it in effect prevents an injured party from obtaining relief." *Terry*, 1982-NMSC-047, ¶ 10. Because it was persuaded that "fundamental considerations of due process" require that the limitation period not be applied to actions occurring within, but close to the end of the limitations period, *id.* ¶ 13, the Court held that an unreasonably short limitations period denies due process. *Id.* ¶ 1. While the Court concluded that three months was unreasonable, *id.* ¶¶ 1, 9, it did not provide any express guidelines for determining what will constitute an "unreasonably short" period of time to result in a violation of due process. Nevertheless, in looking to the question that the Court said it was deciding, we conclude that to be "unreasonably short," the period of time must be "so short that it in effect prevents an injured party from obtaining relief." *Id.* ¶¶ 1, 10.

**{19}**     *Terry* was followed and applied to the statute of repose in *La Farge*, 1995-NMSC-019, ¶ 14. Following *Terry*, our Supreme Court held that "a statute of repose that allows an unreasonably short period of time within which to bring an accrued cause of action violates the Due Process Clause of the New Mexico Constitution." *La Farge*, 1995-NMSC-019, ¶ 36. The Court concluded that, as applied to the plaintiff's claim, the statute of repose violated due process because, when the plaintiff first learned that he had a medical malpractice claim against the doctor, only eighty-five days remained before the limitations period would expire. *Id.* ¶ 37. The Court, however, did not identify what criteria it used to conclude that the eighty-five day time period was "unreasonably short."

**{20}**     In *Cummings*, 1996-NMSC-035, ¶ 57, the plaintiff discovered the malpractice about eighteen months before the statute of repose on her claim expired, and more than two years later, she filed her lawsuit. Recognizing *La Farge* as one of the "few exceptions" to the statute of repose, *Cummings* concluded that eighteen months was not too short a period of time, and held that the plaintiff lost her malpractice claim through her own lack of diligence. *Cummings*, 1996-NMSC-035, ¶¶ 55, 57.

6

**{21}** Some guidance on how to apply the *La Farge/Cummings* due process exception to the statute of repose was subsequently provided in *Tomlinson v. George*, 2005-NMSC-020, ¶¶ 20-27, 138 N.M. 34, 116 P.3d 105. In *Tomlinson*, when the plaintiff discovered she had a potential medical malpractice claim against the defendant, she still had two years and eight months within which to file suit. *Id.* ¶ 2. After noting its holding in *La Farge* that eighty-five days was a constitionally unreasonably short period of time, and its holding in *Cummings* that one and one-half years was a constitutionally reasonable period of time, our Supreme Court concluded in *Tomlinson* that two years and eight months was a constitutionally reasonable period of time to bring suit. *Tomlinson*, 2005-NMSC-020, ¶¶ 23-24. The Court reiterated that if a plaintiff discovers a potential medical malpractice claim within the statutory period of repose, but has an "unreasonably short period of time" within which to file her suit, she "may argue to the district court that Section 41-5-13 is unconstitutional as applied under the *La Farge/Cummings* due process analysis." *Tomlinson*, 2005-NMSC-020, ¶ 27. The Court added:

> We conclude that this flexibility provides district courts with some level of discretion to relax Section 41-5-13's strict three-year occurrence rule in unusual cases involving exceptional circumstances as a matter of fairness while upholding the legislative protection for physicians and assuring New Mexicans access to health care.

*Tomlinson*, 2005-NMSC-020, ¶ 27.

**{22}** Thus, we conclude from the decided cases that there must be "unusual cases involving exceptional circumstances" resulting in an unusually short period of time within which to file suit before the *La Farge/Cummings* due process exception to the statute of repose applies. The period of time must be so short that the plaintiff is in effect prevented from being able to file suit.

**{23}** In this case, when Plaintiff learned of her medical malpractice claim against Defendant, ten and one-half months remained under the statute of repose to sue Defendant. This is longer than the three months in *Terry* and the eighty-five days in *La Farge*, but shorter than the eighteen months in *Cummings* and the two years and eight months in *Tomlinson*, so we have no clear guidance based solely on the amount of time. Nevertheless, during the entire ten and one-half months period of time, the means for discovering Defendant's name were available and within Plaintiff's control. Specifically, these were the EOB forms maintained by Plaintiff's own insurer and her own online banking statements. In addition, Plaintiff knew where Defendant's office was in the Lovelace Women's Hospital building, but she never went to the office to learn his name. Although Defendant no longer worked there, Sandia OB/GYN was still operating and maintained Plaintiff's records. We acknowledge Plaintiff's initial assumption that she was seeking a Lovelace doctor, but the Lovelace records she obtained failed to include the visit to Defendant on August 8, 2006, and Plaintiff knew that as early as November 2008. Moreover, the fact that Plaintiff was initially confused about the month she saw Defendant does not excuse her asking for complete copies

of her insurer's EOB forms for 2006.

**{24}** We cannot conclude, under the facts presented to us, that this case falls within the narrow *La Farge/Cummings* due process exception to the statute of repose. We therefore conclude that ten and one-half months was a constitutionally reasonable amount of time for Plaintiff to bring her medical malpractice suit against Defendant, and having failed to do so, Plaintiff's claims against Defendant are barred by Section 41-5-13. The district court having concluded otherwise, we reverse.

## CONCLUSION

**{25}** The order of the district court is reversed and the case is remanded for further proceedings consistent with this Opinion.

**{26}** **IT IS SO ORDERED.**

_____
**MICHAEL E. VIGIL, Chief Judge**

**I CONCUR:**

_____
**RODERICK T. KENNEDY, Judge**

**M. MONICA ZAMORA, Judge (dissenting).**

**ZAMORA, J., dissenting.**

**{27}** I agree with the Majority, that in New Mexico due process precludes the application of Section 41-5-13's strict three-year occurrence rule where malpractice is discovered so close to the expiration of the limitations period, as to effectively prevent the plaintiff from bringing a cause of action. *Tomlinson*, 2005-NMSC-020, ¶ 21 ("A statute of repose that allows an unreasonably short period of time within which to bring an accrued cause of action violates the Due Process Clause of the New Mexico Constitution." (alteration, internal quotation marks, and citation omitted)); *see Cummings*, 1996-NMSC-035, ¶ 55; *La Farge*, 1995-NMSC-019, ¶ 36; *Terry*, 1982-NMSC-047, ¶ 1. I also agree that due process will only preclude the application of the three-year occurrence rule in "unusual cases involving exceptional circumstances." *Tomlinson*, 2005-NMSC-020, ¶ 27. However, I do not agree that in this case Plaintiff had a constitutionally reasonable amount of time to pursue her cause of action. For that reason, I respectfully dissent.

**{28}** Addressing this issue, our Supreme Court has determined that eighty-five days is a constitutionally unreasonable time within which to file a claim while one and one-half years is constitutionally reasonable. *Id.* As the Majority points out, the question is open as to

8

whether a period of time between eighty-five days and one and one-half years is constitutionally reasonable. While New Mexico precedent does not provide a specific test to determine whether a plaintiff who discovers a potential claim within the statutory period is left with a constitutionally reasonable period of time to file the claim, in my view, the Court's analyses in *Terry* and *Cummings* are instructive.

**{29}** In *Terry*, the court held that the application of a statute of repose where the plaintiff's cause of action accrued approximately three months before the limitations period was set to expire violated due process. *Terry*, 1982-NMSC-047, ¶ 1. In that case, the court based its determination of a constitutionally unreasonable time frame on its review of legislatively created periods of limitation. *See Id.* ¶¶ 16-17. The court noted that, for causes of action such as the one in that case, the Legislature had set the period of limitations at three years. *Id.* ¶ 17. The court also recognized that the Legislature had not specified any period of limitations that was less than one year. *Id.* The court concluded that "[t]here is no New Mexico limitations period which would give an aggrieved party less than three months to pursue a claim for personal injury, as [the statute of repose] would do under these facts." *Id.* ¶ 16.

**{30}** In *Cummings*, the court acknowledged several exceptions to the strict application of the three-year occurrence rule under Section 41-5-13, including the exception that applied where late discovery of malpractice leaves an unconstitutionally short period of time to pursue a cause of action. *Cummings*, 1996-NMSC-035, ¶¶ 55-57. The court concluded that none of the exceptions applied because despite the fact that the plaintiff had eighteen months to pursue her claim, she instead "sat on her rights and did not file any claim for more than two years" after she discovered the malpractice. *Id.* ¶ 57. The court held that the plaintiff "lost her medical malpractice claim through her own lack of diligence."

**{31}** In the present case, Plaintiff argues that using the *Terry* approach, the ten and one-half months she had to file her claim prior to the expiration of the limitations period, was constitutionally unreasonable. Plaintiff compares the ten and one-half month time frame to New Mexico's legislatively created statutes of limitation, which all provide periods of limitation greater than one year. Defendant, on the other hand, argues that under the *Cummings* approach, Plaintiff's claim is time barred as a result of her lack of diligence. The Majority does not address either of these arguments or approaches. Instead, the Majority concludes, in hindsight, that this case does not fall within the narrow *La Farge/Cummings* due process exception to the statute, because Plaintiff should have known Defendant was not a Lovelace doctor, and Plaintiff could have found Defendant's name earlier by looking on her EOB, her bank statements, or by returning to Defendant's office.

**{32}** In my view, the Majority fails to consider Plaintiff's diligence in pursuing her claim, especially in light of the entirety of her circumstances. Plaintiff was living in Wyoming on September 22, 2008, when she learned that Defendant had misdiagnosed her. Less than three weeks later, On October 15, 2008, Plaintiff had been diagnosed with widespread ovarian cancer and underwent extensive surgery to remove her uterus and ovaries. Nonetheless, between October 27, 2008 and November 3, 2008, Plaintiff sent seven medical record

9

requests to Lovelace Hospital and Lovelace contractors attempting to understand what had happened and to obtain her entire medical file, which would include the identity of Defendant. Plaintiff called and was told that there was no record of her visit with Defendant. Plaintiff retained counsel in December 2008, who also requested Plaintiff's medical records, sent several follow up requests, and wrote to Lovelace contractors attempting to obtain information related to Plaintiff's care.

{33}   Reviewing Plaintiff's medical records, Plaintiff's counsel discovered that Plaintiff had been assigned three different medical record numbers. Plaintiff's counsel went to Lovelace Women's Hospital, Lovelace Women's Clinic, and Lovelace Westside Hospital, and obtained copies of Plaintiff's medical records, which were compared against the contents of Plaintiff's original chart. Lovelace claimed it had made all Plaintiff's records available; however, additional records were later discovered at another Lovelace location. Later still, records were located in the film jacket of Plaintiff's May 2006 ultrasound.

{34}   The Majority asserts that Plaintiff should have known that Defendant was not a Lovelace doctor based on the fact that there was nothing in the response to Plaintiff's initial records requests related to her visit with Defendant. In light of the disorganization of Plaintiff's Lovelace records, I do not believe this is a fair assumption. The Majority also assumes that Plaintiff could have discovered Defendant's identity by reviewing an EOB from August 2006, which the Majority insists was "in her control." However, this is not supported by the record. The EOB for the August 2006 visit was mailed to Plaintiff at an address where she no longer received mail. Even though Plaintiff had filled out a change of address form she testified that she had not received the EOB. Plaintiff requested and received EOBs from Lovelace Health Plan for May, June, and July, but not August 2006. Plaintiff did not actually have the August EOB that identified Defendant until July 2010.

{35}   Additionally, the Majority assumes Plaintiff could have discovered Defendant's identity by reviewing her bank statements that showed the co-pay for her visit to Defendant's office. However, the bank statements did not reveal Defendant's name. The entry showed a payment to "Sandia OB-GYN Assoc." At that time, Lovelace used the name "Lovelace Sandia Health System." It is not necessarily fair to assume that Plaintiff would have reviewed her bank statement two years later and deduce that Sandia OB-GYN was an entirely separate entity from "Lovelace Sandia Health System."

{36}   Finally, the Majority assumes that Plaintiff could have returned to the office where she had initially seen Defendant and identified him there. However, Defendant did not practice in that office after February 2007 and there is no indication in the record that Plaintiff would have been able to retrieve any records pertaining to Defendant's treatment if she had gone to the office.  Moreover, Plaintiff was in New York recovering for eight months after her surgery, and, thereafter, she was traveling back and forth from Wyoming to New York as she continued her follow-up care. It is not reasonable to assume that Plaintiff could have physically gone to the office to track Defendant down.

10

**{37}** Under *La Farge* a plaintiff who discovers malpractice "during the statutory period as it runs from the occurrence of the negligent act *must* have a reasonable period of time from the discovery to file his or her claim." *Tomlinson*, 2005-NMSC-020, ¶ 23 (emphasis added). This requirement is rooted in principles of fairness, which are inherent in the Due Process Clauses of the United States and New Mexico Constitutions. *La Farge*, 1995-NMSC-019, ¶ 36.

**{38}** In my view, it is these principles of fairness that bring this case within the *La Farge/Cummings* exception. Plaintiff diligently pursued her claim while she faced a grave diagnosis, a serious surgery, an eight-month recovery, and years of continued treatment. While it is unfortunate that Plaintiff did not obtain the August 2006 EOB sooner, she certainly did not sit on her rights. She began investigation of her treatment history immediately after the accrual of her claim. She obtained counsel within three months of the accrual of her claim. She continued her efforts to identify Defendant after the filing of the complaint and amended her complaint three days after finally learning Defendant's name.

**{39}** For these reasons I believe that ten and one-half months was an unreasonably short time for Plaintiff to name Defendant in her complaint. I would affirm the district court's decision. I also believe it is worth noting that in both *Terry* and *La Farge*, where the court found that the plaintiffs had a constitutionally unreasonable time to pursue their claims, the court applied the three-year limitation period that would have been applicable if the statute of repose had not been enacted. *See Terry*, 1982-NMSC-047, ¶ 17; *see also La Farge*, 1995-NMSC-019, ¶ 37.

_____

**M. MONICA ZAMORA, Judge**

11