OPINION VIGIL, Chief Judge. {1} This is a medical malpractice action against a qualified healthcare provider under the Medical Malpractice Act, NMSA 1978, §§ 41-5-1 to -29 (1976, as amended through 2008). When Plaintiff learned she had a malpractice claim against Defendant, ten and one-half months remained under the Act’s three-year statute of repose to sue Defendant. Section 41-5-13. The question posed is whether this was a constitutionally reasonable period of time for Plaintiff to file her lawsuit against Defendant. Because we conclude that, consistent with due process, Plaintiff had a reasonable period of time to sue Defendant, and Defendant was not named until eleven months after the statute of repose expired, Plaintiffs suit against Defendant is barred. The district court having ruled otherwise, we reverse. BACKGROUND {2} On May 17, 2006, Plaintiff, Sara Cahn, went to the emergency room of Lovelace Women’s Hospital complaining of abdominal and pelvic pain. Plaintiff received a pelvic ultrasound on May 19, 2006, at Lovelace West Mesa Medical Center, and the ultrasound report stated that there was a complex mass on Plaintiffs left ovary and noted that “[a] malignancy need[ed] to be excluded.” Plaintiff was twenty-seven years old. {3} The one and only time Plaintiff was seen by Defendant, Dr. Berryman, was on August 8, 2006, to review the ultrasound report that Plaintiff hand carried to the appointment and gave to Defendant. Defendant did not disclose to Plaintiff the findings contained in the ultrasound report. Instead, Defendant examined Plaintiff and diagnosed her with endometriosis and prescribed approximately three months of suppressive therapy (contraceptive patches) to treat her symptoms. {4} Plaintiff used her debit card to pay the $30 co-payment to Sandia OB/GYN, Defendant’s employer, and Plaintiffs insurer, Lovelace Health Plan, mailed her an Explanation of Benefits (EOB) form dated August 23, 2006, which identified Defendant as the doctor Plaintiff saw on August 8, 2006. The EOB form was mailed to an address where Plaintiff no longer lived, but her mail was being forwarded to where she was living. {5} Plaintiff moved to Wyoming and saw Dr. Mary Girling on September 22, 2008, for continuing abdominal pain. Dr. Girling reviewed the May 19,2006, ultrasound report, and told Plaintiff of the ultrasound findings. Plaintiff now knew she had a medical malpractice claim against Defendant. Further tests confirmed Plaintiff had ovarian cancer, and over the next three and one-half months, Plaintiff underwent surgery and treatment in New York and Boston, which included a total hysterectomy to remove her uterus and ovaries. Plaintiff hired counsel in December 2008 to pursue her malpractice claim against Defendant. {6} Plaintiff did not know Defendant’s name. Despite Plaintiffs efforts and those of her attorneys, which we describe in more detail below, Plaintiff first learned of his name after requesting complete copies of her insurer’s EOB forms after the statute of repose expired in June or July 2010. In response to the reqixest, an EOB form was produced on July 1, 2010, showing that D efendant, as an employee of Sandia OB/GYN, saw Plaintiff on August 8, 2006. Plaintiffs bank statements, which Plaintiff had not reviewed until the EOB form was produced, revealed the $30 transaction payable to Defendant’s employer, Sandia OB/GYN, in August 2006. At all times, Plaintiff had used the checking account and had access to her online bank statements. Plaintiff also gave a deposition on June 3, 2010, after the statute of repose expired, describing where Defendant’s office was located, but Plaintiff never went to that location to ascertain Defendant’s name. Thus, Plaintiff had ten and one-half months from the date that she discovered she had a malpractice claim against Defendant to learn of his name. However, it was not until eleven months after the three-year statute of repose expired that Plaintiff discovered Defendant’s identity. And she discovered it using information which was available to Plaintiff from the time Plaintiff first learned she had a malpractice claim against Defendant. {7} These facts notwithstanding, Plaintiff asserts that her diligence in attempting to learn of Defendant’s name “was thwarted by a confusing medical record system that prevented her from identifying a doctor that for all practical purposes appeared to be a Lovelace provider[,]” and Plaintiff admits that “her inadvertent mistake was assuming that she was looking for a Lovelace doctor.” Plaintiffs confusion was understandable. {8} At the pertinent time, Lovelace Health System, Inc. (Lovelace), which was previously called Lovelace Sandia Health System, was a licensed healthcare provider composed of several hospitals and medical centers, and Plaintiff was insured by Lovelace Health Plan. Plaintiff originally went to the emergency room at Lovelace Women’s Hospital, which was part of Lovelace, and the pelvic ultrasound was performed at Lovelace West Mesa Medical Center, which was also part of Lovelace. Plaintiffs original appointment to discuss the ultrasound report was with a doctor at Lovelace Women’s Hospital, but it was cancelled, and when Plaintiff called Lovelace Women’s Hospital to reschedule the appointment, Lovelace Women’s Hospital provided her with Defendant’s name. Defendant saw Plaintiff in an office located in the Lovelace Women’s Hospital Building. Defendant, however, was not a Lovelace doctor. He was employed by Sandia OB/GYN, a separate entity owned and operated by Dr. Carl Conners, in the Lovelace Women’s Hospital building. {9} Plaintiff attempted to collect her medical records from Lovelace to identify the doctors that treated her. She undertook these efforts from September through November 2008, while undergoing treatment and recovery from the cancer. Plaintiff sent eight letters requesting her records from Lovelace Women’s Health, Lovelace Westside Hospital, and Lovelace Women’s Health/AB Q Health Partners. Believing she visited the doctor only one or two months after the ultrasound, Plaintiff requested Lovelace Health Plan EOB records for May, June, and July 2006, but not August 2006. None of the records reflected Plaintiffs August 8, 2006, visit or the name of the doctor that examined her. {10} Plaintiff also called Lovelace Women’s Hospital and talked to an employee about the missing record. The Lovelace employee reviewed Plaintiffs records and confirmed there was no record of the August 8, 2006, visit. Plaintiff also described Dr. Berryman, and the employee volunteered that it might be another doctor. The Lovelace employee checked that doctor’s records, but there was no record of Plaintiff s visit. {11} Plaintiffs counsel, retained in December 2008, also proceeded to collect Plaintiffs medical records from Lovelace entities. Plaintiffs counsel sent requests to Lovelace Westside OB/GYN, Lovelace Women’s Hospital, Lovelace Westside Hospital, and Lovelace Sandia Health System physician billing and business office in December 2008 and January 2009. Plaintiffs counsel also contacted contractors that have records and billing information directly related to Lovelace. Plaintiffs counsel requested medical charts and itemized billings from May 17, 2006, until February 4, 2011. None of the documents received included Plaintiffs August 8, 2006, visit with Dr. Berryman. {12} Plaintiff filed her complaint on April 10, 2009, naming Lovelace, five doctors employed by Lovelace, and “John Doe” as defendants. “John Doe” was identified as “a physician who [may have] provided care to [Plaintiff] whose identity cannot be ascertained at this time[.]” Fourteen months later in June 2010, Plaintiff subsequently filed a discovery request for all her EOB records from Lovelace Health Plan. Those records, which Plaintiff received on July 1, 2010, disclosed Defendant’s name, and Plaintiff filed an amended complaint on July 9, 2010, naming Defendant and Sandia OB/GYN as Defendants. Defendant did not know of the litigation until July 16, 2010, when he was served. {13} Defendant moved for summary judgment, arguing that the three-year statute of repose expired on August 8, 2009, barring Plaintiffs claim. The district court denied the motion, ruling that the three-year time bar “violates Plaintiffs substantive due process rights under the United States Constitution and New Mexico Constitution[.]” Following additional discovery, Defendant filed a motion to reconsider, which the district court denied. {14} The parties then entered into a stipulated conditional directed verdict, which was approved by the district court. Therein, the parties agreed and stipulated that if the three-year statute of repose bars Plaintiffs claims against Defendant, she cannot recover, but if Plaintiffs claims are not time-barred, Defendant is liable to Plaintiff on her claims of medical malpractice. The parties further stipulated and agreed to entry of a directed verdict against Defendant in the amount of $700,000, plus interest, subject to Defendant’s right to appeal the district court order that the three-year statute of repose violates Plaintiffs right to substantive due process. The district court filed the stipulated judgment, and Defendant appeals. See Kysar v. BP Am. Prod. Co., 2012-NMCA-036, ¶ 17, 273 P.3d 867 (concluding that an appeal will lie from a stipulated conditional judgment when specific conditions are satisfied). DISCUSSION {15} The Medical Malpractice Act aims “to promote the health and welfare of the people of New Mexico by making available professional liability insurance for health care providers in New Mexico.” Section 41-5-2. One way in which the Act seeks to accomplish this goal is by establishing a “termination point” for medical malpractice claims. Cummings v. X-Ray Assocs. of N.M., P.C., 1996-NMSC-035, ¶¶ 38-41, 121 N.M. 821, 918 P.2d 1321. That termination point is set forth in the Act’s three-year statute of repose, which states, No claim for malpractice arising out of an act of malpractice which occurred subsequent to the effective date of the Medical Malpractice Act may be brought against a health care provider unless filed within three years after the date that the act of malpractice occurred[.] Section 41-5-13. The statute is an “occurrence” based rule, meaning the time period for filing a lawsuit begins to run at the time of the malpractice without regard to when the underlying cause of action accrues and without regard to discovery of the injury or damages. Cummings, 1996-NMSC-035, ¶ 50; Garcia ex rel. Garcia v. La Farge, 1995-NMSC-019, ¶ 14, 119 N.M. 532, 893 P.2d 428. See Chavez v. Delgado, 2014-NMCA-014, ¶¶ 5, 11, 316 P.3d 907 (concluding that the statutory “act of malpractice” for negligently prescribing medication is the discrete act of prescribing medication to the patient, not the date of injury or the last day the medication was taken), cert. denied, 2013-NMCERT-012, 321 P.3d 126; Meza v. Topalovski, 2012-NMCA-002, ¶ 19, 268 P.3d 1284 (stating that Cummings has interpreted Section 41-5-13 as an occurrence-based statute of repose rather than a discovery-based statute of limitations, and that “[t]he limitations period runs from the date of the occurrence, as opposed to the date of discovery,” and terminates the right of any action after the three years has elapsed even if no injury has manifested itself). Unlike a statute of limitation, which does not begin to run until the patient discovers, or reasonably should discover, the malpractice, “a statute of repose terminates the right to any action after a specific time has elapsed, even though no injury has yet manifested itself.” Cummings, 1996-NMSC-035, ¶¶ 47, 50. The statute of repose “put[s] an end to prospective liability for wrongful acts that, after the passage of a period of time, have yet to give rise to a justiciable claim.” La Farge, 1995-NMSC-019, ¶ 14. {16} The Legislature may impose a statutory time deadline for commencing a cause of action as long as a reasonable time is provided for commencing suit. La Farge, 1995-NMSC-019, ¶ 33. However, if a plaintiff is left with an unconstitutionally short period of time to file suit within the period of the statute of repose, due process is violated. Id. ¶ 26. The question presented in this case is whether Plaintiff had a reasonable period of time, consistent with due process, within which to bring her suit against Defendant. Standard of Review {17} Whether Plaintiff was deprived of due process presents a question which we review de novo. See Martinez v. Pub. Emps. Ret. Ass’n, 2012-NMCA-096, ¶ 27, 286 P.3d 613; Los Chavez Cmty. Ass’n v. Valencia Cnty., 2012-NMCA-044, ¶ 12, 277 P.3d 475. In addition, we review de novo a district court order granting or denying a motion for summary judgment. Chavez, 2014-NMCA-014, ¶ 4. Analysis {18} We begin with Terry v. New Mexico State Highway Commission, 1982-NMSC-047, ¶ 9, 98 N.M. 119, 645 P.2d 1375, abrogated on other grounds by Coleman v. United Engineers & Constructors, Inc., 1994-NMSC-074, 118 N.M. 47, 878 P.2d 996, in which the cause of action accrued three months before the applicable statute of limitations expired, and the lawsuit was filed after the statute of limitations expired. Our Supreme Court declared that it was required to decide “whether a cause of action, once accrued, may be barred by a period so short that it in effect prevents an injured party from obtaining relief.” Terry, 1982-NMSC-047, ¶ 10. Because it was persuaded that “fundamental considerations of due process” require that the limitation period not be applied to actions occurring within, but close to the end of the limitations period, id. ¶ 13, the Court held that an unreasonably short limitations period denies due process. Id. ¶ 1. While the Court concluded that three months was unreasonable, id. ¶¶ 1, 9, it did not provide any express guidelines for determining what will constitute an “unreasonably short” period of time to result in a violation of due process. Nevertheless, in looking to the question that the Court said it was deciding, we conclude that to be “unreasonably short,” the period of time must be “so short that it in effect prevents an injured party from obtaining relief.” Id. ¶¶ 1, 10. {19} Terry was followed and applied to the statute of repose in La Farge, 1995-NMSC-019, ¶ 14. Following Terry, our Supreme Court held that “a statute of repose that allows an unreasonably short period of time within which to bring an accrued cause of action violates the Due Process Clause of the New Mexico Constitution.” La Farge, 1995-NMSC-019, ¶ 36. The Court concluded that, as applied to the plaintiffs claim, the statute of repose violated due process because, when the plaintiff first learned that he had a medical malpractice claim against the doctor, only eighty-five days remained before the limitations period would expire. Id. ¶ 37. The Court, however, did not identify what criteria it used to conclude that the eighty-five day time period was “unreasonably short.” {20} In Cummings, 1996-NMSC-035, ¶ 57, the plaintiff discovered the malpractice about eighteen months before the statute of repose on her claim expired, and more than two years later, she filed her lawsuit. Recognizing La Farge as one of the “few exceptions” to the statute of repose, Cummings concluded that eighteen months was not too short a period of time, and held that the plaintiff lost her malpractice claim through her own lack of diligence. Cummings, 1996-NMSC-035, ¶¶ 55, 57. {21} Some guidance on how to apply the La Farge/Cummings due process exception to the statute of repose was subsequently provided in Tomlinson v. George, 2005-NMSC-020, ¶¶ 20-27, 138 N.M. 34, 116 P.3d 105. In Tomlinson, when the plaintiff discovered she had a potential medical malpractice claim against the defendant, she still had two years and eight months within which to file suit. Id. ¶ 2. After noting its holding in La Farge that eighty-five days was a constitionally unreasonably short period of time, and its holding in Cummings that one and one-half years was a constitutionally reasonable period of time, our Supreme Court concluded in Tomlinson that two years and eight months was a constitutionally reasonable period of time to bring suit. Tomlinson, 2005-NMSC-020, ¶¶ 23-24. The Court reiterated that if a plaintiff discovers a potential medical malpractice claim within the statutory period of repose, but has an “unreasonably short period of time” within which to file her suit, she “may argue to the district court that Section 41-5-13 is unconstitutional as applied under the La Farge/Cummings due process analysis.” Tomlinson, 2005-NMSC-020, ¶ 27. The Court added: We conclude that this flexibility provides district courts with some level of discretion to relax Section 41-5-13’s strict three-year occurrence rule in unusual cases involving exceptional circumstances as a matter of fairness while upholding the legislative protection for physicians and assuring New Mexicans access to health care. Tomlinson, 2005-NMSC-020, ¶ 27. {22} Thus, we conclude from the decided cases that there must be “unusual cases involving exceptional circumstances” resulting in an unusually short period of time within which to file suit before the La Farge/Cummings due process exception to the statute of repose applies. The period of time must be so short that the plaintiff is in effect prevented from being able to file suit. {23} In this case, when Plaintiff learned of her medical malpractice claim against Defendant, ten and one-half months remained under the statute of repose to sue Defendant. This is longer than the three months in Terry and the eighty-five days in La Farge, but shorter than the eighteen months in Cummings and the two years and eight months in Tomlinson, so we have no clear guidance based solely on the amount of time. Nevertheless, during the entire ten and one-half months period of time, the means for discovering Defendant’s name were available and within Plaintiffs control. Specifically, these were the EOB forms maintained by Plaintiffs own insurer and her own online banking statements. In addition, Plaintiff knew where Defendant’s office was in the Lovelace Women’s Hospital building, but she never went to the office to learn his name. Although Defendant no longer worked there, Sandia OB/GYN was still operating and maintained Plaintiff’s records. We acknowledge Plaintiffs initial assumption that she was seeking a Lovelace doctor, but the Lovelace records she obtained failed to include the visit to Defendant on August 8, 2006, and Plaintiff knew that as early as November 2008. Moreover, the fact that Plaintiff was initially confused about the month she saw Defendant does not excuse her asking for complete copies of her insurer’s EOB forms for 2006. {24} We cannot conclude, under the facts presented to us, that this case falls within the narrow La Farge/Cummings due process exception to the statute of repose. We therefore conclude that ten and one-half months was a constitutionally reasonable amount of time for Plaintiff to bring her medical malpractice suit against Defendant, and having failed to do so, Plaintiffs claims against Defendant are barred by Section 41-5-13. The district court having concluded otherwise, we reverse. CONCLUSION {25} The order of the district court is reversed and the case is remanded for further proceedings consistent with this Opinion. {26} IT IS SO ORDERED. MICHAEL E. VIGIL, Chief Judge I CONCUR: RODERICK T. KENNEDY, Judge