This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**GREGORY L. BAKER and**
**LAURIE D. BAKER,**

    Plaintiffs-Appellants,

v.                                                            **NO. 34,664**

**WOOD METAL CONCRETE, LLC,**

    Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Francis J. Mathew, District Judge**

John B. Pound, LLC
John B. Pound
Santa Fe, NM

for Appellants

Montgomery & Andrews, P.A.
Kevin M. Sexton
Miguel P. Archuleta
Carolyn A. Wolf
Santa Fe, NM

for Appellee

**MEMORANDUM OPINION**

**VANZI, Judge.**

{1} Summary judgment was granted to Defendant Wood Metal Concrete, LLC, on the ground that the statute of repose limiting liability for construction projects to ten years after their substantial completion bars the present suit. Gregory and Laurie Baker (Plaintiffs) appeal, contending that their claims are not time-barred under the due process rule announced in *Terry v. New Mexico State Highway Commission*, 1982-NMSC-047, 98 N.M. 119, 645 P.2d 1375. We affirm.

**BACKGROUND**

{2} The following facts are not in dispute. In July 2010, Plaintiffs purchased a home in the Sierra Del Norte Subdivision in Santa Fe, New Mexico. The home was designed by Defendant a decade earlier and first occupied by the sellers on November 21, 2001.

{3} Plaintiffs had the structure of the home inspected prior to closing. The inspector's report noted "heaving in the garage area" with "related cracking in some adjacent walls." Plaintiffs discussed the issue with the builder of the home, who explained that melting snow in the gravel driveway had been causing the soil under the building to expand, resulting in damage to the slab. The builder represented to Plaintiffs that he had returned to the site to remedy the drainage issue in 2008, installing new french drains and gutters and paving the driveway and surrounding area.

{4} Not convinced that the problem had been fully resolved by those efforts, Plaintiffs hired a structural engineering firm to inspect the garage in July 2010. The

resulting report observed that "[t]he garage slab has heaved and separated specifically at the joint which is nearest to the main portion of the house" and that there were "minor shrinkage cracks in the garage floor slab[,]" but that there was no evidence of structural distress in the house itself. The engineer's report also stated:

> It is common knowledge that several residences in the Sierra Del Norte area have incurred significant damage due to subsurface instability. We have had great success in preventing structural distress with careful and good management of the grading and drainage around the houses. It is my professional opinion that this house is in good structural condition, the grading and drainage and waterproofing have been correctly installed and that future potential for damage is next to none.

Presumably encouraged by these representations, Plaintiffs purchased the home.

{5} According to Plaintiffs, cracks began to appear in the interior and exterior of the house in mid-2011. They hired a different structural engineer and a soil consultant who ultimately concluded that the home "had been built over clay/shale materials, which possessed the ability to swell and heave vertically when wetted." The soil consultant also noted that the slab had probably been heaving since it was first constructed. Plaintiffs sued the builder, the sellers, the first engineer, and Defendant on April 10, 2014.

{6} With respect to Defendant, Plaintiffs alleged that a topographic survey showed on its face that the site was one of greatly varied elevations, with approximate eleven-foot variations within the footprint of the home. Despite this, Defendant's specifications provided that all footings were to bear on undisturbed soil, causing the

home to be constructed with inadequate foundations on inadequately prepared subsoil. According to the complaint, this design ultimately caused the slab to heave. The district court applied the relevant statute of repose and granted summary judgment to Defendant, resulting in this appeal. The district court's ruling is only appropriate if there are no genuine issues of material fact and Defendant is entitled to judgment as a matter of law. *See Jacobo v. City of Albuquerque*, 2005-NMCA-105, ¶ 4, 138 N.M. 184, 118 P.3d 189. "We review these legal questions de novo." *Id.* (internal quotation marks and citation omitted).

**DISCUSSION**

{7}     By statute, liability arising from defective or unsafe conditions created during the improvement of real property is limited to ten years from substantial completion of the improvement. NMSA 1978, § 37-1-27 (1967). Section 37-1-27 is a statute of repose, meaning that it is intended "to put an end to prospective liability for wrongful acts that, after the passage of a period of time, have yet to give rise to a justiciable claim." *Garcia ex rel. Garcia v. La Farge*, 1995-NMSC-019, ¶ 14, 119 N.M. 532, 893 P.2d 428. Unlike a statute of limitations, Section 37-1-27 begins to run from the date of substantial completion of a project "without regard to when the underlying cause of action accrues and without regard to the discovery of injury or damages." *Garcia*, 1995-NMSC-019, ¶ 14. Thus, our Supreme Court has recognized that the purpose of the statute, as evidenced by its history and text, is to shift liability from protected

4

parties to property owners and other tortfeasors ten years after completion of a project. *See Saiz v. Belen Sch. Dist.*, 1992-NMSC-018, ¶ 41, 113 N.M. 387, 827 P.2d 102.

{8} However, when application of Section 37-1-27 would create an "unreasonably short" period of time to pursue a remedy against a protected party, due process requires the courts to intervene. *Terry*, 1982-NMSC-047, ¶¶ 14-17. In short, the statute cannot be constitutionally applied to bar any cause of action accruing within but close to the end of the ten-year period. *Id.* ¶ 13. This is a narrow doctrine that we have previously applied only in " 'unusual cases involving exceptional circumstances' resulting in an unusually short period of time within which to file suit[.]" *Cahn v. Berryman*, 2015-NMCA-078, ¶ 22, 355 P.3d 58, *cert. granted*, 2015-NMCERT-007, 355 P.3d 58. When the *Terry* rule is implicated, Section 37-1-27 does not apply, and the period for liability is only limited by the generally applicable accrual-based statute of limitations that would ordinarily apply to the claim alleged. *See Terry*, 1982-NMSC-047, ¶ 17; *see also Garcia*, 1995-NMSC-019, ¶ 37 (applying *Terry* to the statute of repose for medical malpractice claims). In *Terry*, for instance, the Court held that Section 37-1-27 was unconstitutional as applied to a cause of action for bodily injuries arising from unsafe conditions on a state highway that accrued approximately three months before the end of the ten-year statutory period. *Terry*, 1982-NMSC-047, ¶¶ 2, 10, 16. Under those circumstances, the Court declined to enforce the statute and

instead applied the three-year statutes of limitations for personal injury and wrongful death claims. *Id.* ¶ 17.

**{9}** It is uncontested that Section 37-1-27's ten-year period began when the certificate of occupancy was issued on November 21, 2001. That period would have expired in November 2011, long before Plaintiffs filed their complaint. But Plaintiffs argue that *Terry*'s due process exception controls this case and that their claims are thus limited only by the generally applicable accrual-based statutes of limitations for negligence and breach of contract. *See Terry*, 1982-NMSC-047, ¶ 17. Resolving Plaintiffs' contention necessarily involves two determinations: first, we must identify the date the cause of action accrued, and second, we apply the *Terry* analysis to determine whether the time remaining between the accrual date and the expiration of the statutory period was unreasonably short.

**{10}** The parties seem to agree that the cause of action in this case accrued when Plaintiffs discovered the injury to the property. *See* NMSA 1978, § 37-1-7 (1880) ("[I]n actions for injuries to . . . property, the cause of action shall not be deemed to have accrued until the . . . injury . . . complained of[] shall have been discovered by the party aggrieved."). "The key consideration under the discovery rule is the factual, not the legal, basis for the cause of action." *Christus St. Vincent Reg'l Med. Ctr. v. Duarte-Afara*, 2011-NMCA-112, ¶ 29, 267 P.3d 70 (internal quotation marks and citation omitted). Thus, discovery occurs—and the cause of action accrues—"when

6

the plaintiff knows or should know the relevant facts, whether or not the plaintiff also knows that these facts are enough to establish a legal cause of action." *Id.* (internal quotation marks and citation omitted). When conflicting inferences can be drawn, the application of the discovery rule is a jury question. *Williams v. Stewart*, 2005-NMCA-061, ¶ 16, 137 N.M. 420, 112 P.3d 281.

{11}     The basis for the complaint is that Defendant improperly specified that the footings of the home were to bear on undisturbed soil, causing and contributing to heaving. It is undisputed that Plaintiffs had actual knowledge of the damage to the slab as well as its potential cause—unstable soils—by the end of July 2010. As early as June 22, 2010, Plaintiffs indicated in documents related to the purchase of the property that they were aware of "cracking and heaving in the garage area[.]" Shortly thereafter they disclosed to the structural engineer that the home inspection uncovered heaving in the garage slab and cracking in some adjacent walls. The engineer's subsequent report to Plaintiffs, dated July 8, 2010, confirmed that "[t]he garage slab ha[d] heaved and separated specifically at the joint which is nearest to the main portion of the house" and that it was "common knowledge that several residences in the Sierra Del Norte area have incurred significant damage due to subsurface instability." Plaintiffs' conversation with the builder of the home was to the same effect. Thus, by the end of July 2010, Plaintiffs knew, or through reasonable diligence should have known, the facts relevant to their suit against Defendant.

**{12}** Plaintiffs point to facts in the record that indicate that they had reason to believe that the problem had been resolved by the builder's efforts in 2008. Representations from the builder, together with the engineer's report, which ultimately concluded that the 2008 repairs were functioning to maintain good subsurface stability and that there was "no reason to believe that the house [would] not continue to remain stable[,]" certainly support that inference. And that inference, if accepted by the fact finder, might affect the discovery date for a cause of action against the builder or the engineer. *See id.* But it has no effect on the undisputed fact that in July 2010 Plaintiffs knew or should have known that slab damage in their home resulted from the building's construction on unstable soils, which is the precise basis for the suit against Defendant. In cases involving undisputed facts that show that a plaintiff "knew, or should have been aware of the negligent conduct on or before a specific date, the issue [of discovery] may be decided as a matter of law." *Id.* ¶ 21 (internal quotation marks and citation omitted).

**{13}** Plaintiffs call our attention to *Yurcic v. City of Gallup*, 2013-NMCA-039, 298 P.3d 500, which they describe as "directly on point." In *Yurcic*, the plaintiff sued the City of Gallup and various other defendants, alleging that seepage from a neighboring retaining pond was eroding the foundation of her building. *Id.* ¶¶ 2-3. The suit was filed in 2008. *Id.* ¶ 3. This Court applied two separate statutes of limitations—two years for claims against the city and four years for claims against the nongovernmental

8

defendants. *Id.* ¶¶ 7-8. Although it was undisputed that the plaintiff's tenant informed her of cracks in the foundation and told her that he believed the pond to be their cause, the testimony conflicted about *when* that conversation took place. *Id.* ¶¶ 15, 17. At the earliest, it occurred in 2002, meaning that claims against all defendants would have been time-barred. *Id.* ¶ 15. At the latest, it occurred in 2004, meaning that claims against the nongovernmental defendants could go forward. *Id.* ¶ 16. This Court therefore refused to decide issues related to the accrual of the cause of action against the nongovernmental defendants as a matter of law because the date of the critical conversation between the plaintiff and her tenant was materially disputed, precluding summary judgment. *Id.* ¶ 18.

{14} On the other hand, we recognized in *Yurcic* that claims against the city would have been time-barred as a matter of law.[1] *Id.* ¶¶ 19, 22. We viewed the conversation between the plaintiff and her tenant as undisputably establishing that the plaintiff was or should have been aware of "(1) serious structural damage requiring further investigation, and (2) a causal link between the pond and the injury to [her] property." *Id.* ¶ 20. Because the lawsuit was filed in 2008 and because the statute of limitations for claims against the city was only two years, and not four, it was immaterial whether the conversation occurred in 2002, 2004, or any time between. *Id.* ¶ 19.

---

[1]We ultimately reversed the grant of summary judgment to the city on grounds that are not applicable in this case. *Id.* ¶¶ 23, 37.

{15}   If, as Plaintiffs suggest, we are going to analogize to *Yurcic* in order to determine when the cause of action accrued, we find the case against the city to be the appropriate analog. It is undisputed that Plaintiffs were aware of (1) structural damage (heaving) to their slab; and (2) a causal link between the damaged slab and the unstable soil beneath it. It is also undisputed that Plaintiffs had that relevant knowledge before the end of July 2010. Therefore, notice was established at that time and "the issue of [discovery] may be decided as a matter of law." *Williams*, 2005-NMCA-061, ¶ 21 (internal quotation marks and citation omitted); *see Yurcic*, 2013-NMCA-039, ¶ 20.

{16}   The statute of repose would have run in late November 2011. That left approximately sixteen months to file suit after the cause of action accrued against Defendant. The question under *Terry* is whether this is an unreasonably short period of time to pursue a remedy, thereby implicating due process concerns. 1982-NMSC-047, ¶¶ 14-15. Stated otherwise, the inquiry is whether this case is one of those " 'unusual cases involving exceptional circumstances' resulting in an unusually short period of time within in which to file suit[.]" *Cahn*, 2015-NMCA-078, ¶ 22. It is not. *See id.* ("The period of time must be so short that the plaintiff is in effect prevented from being able to file suit."). There is nothing in the record indicating that Plaintiffs had insufficient information concerning the identity of Defendant or the nature of the work performed. And we can locate no prior case that has ever applied the due process

exception to a period of time longer than one year. *See Tomlinson v. George*, 2005-NMSC-020, ¶ 24, 138 N.M. 34, 116 P.3d 105; *Cummings v. X-Ray Assocs. of N.M., P.C.*, 1996-NMSC-035, ¶ 57, 121 N.M. 821, 918 P.2d 1321; *Garcia*, 1995-NMSC-019, ¶ 37; *Cahn*, 2015-NMCA-078, ¶ 24.

{17}     Plaintiffs, in fact, do not argue on appeal that sixteen months is insufficient under *Terry*. Their argument under *Terry* relies entirely on the premise that the cause of action may have accrued three to four and one-half months prior to the expiration of the statutory period because third parties encouraged them to buy the home, notwithstanding known damage to the slab. Having already rejected that view, we affirm the district court's grant of summary judgment to Defendant. We note that nothing in this Opinion is intended to prevent Plaintiffs from seeking relief against other allegedly culpable parties. *Saiz*, 1992-NMSC-018, ¶ 41 (stating that the purpose of Section 37-1-27 is to shift liability from protected parties to other tortfeasors ten years after completion of a project).

**CONCLUSION**

{18}     For the reasons stated, the district court's order granting summary judgment in favor of Defendant is affirmed.

{19}     **IT IS SO ORDERED.**

_____
**LINDA M. VANZI, Judge**

11

**WE CONCUR:**


_____
**JONATHAN B. SUTIN, Judge**


_____
**RODERICK T. KENNEDY, Judge**